ATTORNEY GENERAL *vs.* THE BOOK NAMED "GOD'S LITTLE ACRE."

Suffolk.     December 8, 1949. — July 26, 1950.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Obscene, Indecent or Impure Publication.     Book.     Constitutional Law,* Freedom of the press, Police power.

Upon appeal in a proceeding under G. L. (Ter. Ed.) c. 272, §§ 28C–28G, inserted by St. 1945, c. 278, § 1, from a decree in favor of a certain novel abounding in sexual episodes, some of which were portrayed with realistic detail, and containing instances where the author's treatment of sexual relations descended to outright pornography, this

court determined that the book read as a whole was obscene, indecent or impure and reversed the decree notwithstanding expert testimony in the case that the book was a sincere and serious work possessing literary merit and having a sociological value.

A warranted adjudication of a book as obscene, indecent or impure in a proceeding under G. L. (Ter. Ed.) c. 272, §§ 28C–28G, inserted by St. 1945, c. 278, § 1, is a proper exercise of the police power and does not abridge the right of freedom of the press in violation of the Fourteenth Amendment to the Federal Constitution.

PETITION, filed in the Superior Court on February 4, 1949.

The case was heard by *Fairhurst*, J.

In this court the case was argued in December, 1949, before *Qua*, C.J., *Lummus, Wilkins, Spalding,* & *Counihan,* JJ., and afterwards was submitted on briefs to all the Justices.

*J. J. Kelleher,* (*J. J. Bresnahan,* Assistant Attorney General, & *L. E. Ryan* with him,) for the petitioner.

*R. W. Meserve,* (*J. B. Ullman* with him,) for Erskine Caldwell and others.

SPALDING, J. The Attorney General under the provisions of G. L. (Ter. Ed.) c. 272, §§ 28C–28G, as inserted by St. 1945, c. 278, § 1, seeks by this petition to have the novel "God's Little Acre" by Erskine Caldwell adjudicated obscene, indecent, or impure. In an answer filed by persons interested in the book it was admitted that it was being sold and distributed in this Commonwealth. From a final decree in favor of the book the Attorney General appealed. The case comes here on a report of the evidence, including a copy of the book itself, and findings of fact by the trial judge.

While conceding "that if one were seeking so called racy, off-color or suggestive paragraphs, they can be found in the book," the judge was of opinion that the "book as a whole would not stimulate sexual passions or desires in a person with average sex instincts," and concluded that he did not believe that it would have "a substantial tendency to deprave or corrupt its readers by inciting lascivious thoughts or arousing lustful desires."

The tests to be applied in determining whether a book is

obscene, indecent, or impure are fully set forth in the recent case of *Commonwealth* v. *Isenstadt,* 318 Mass. 543. They were quoted with approval and applied in *Attorney General* v. *"Forever Amber,"* 323 Mass. 302. They need not be restated. Comprehensive and complete as are these tests, their application in a given case is by no means easy. Indeed it is not indulging in hyperbole to say that no more difficult or delicate task confronts a court than that arising out of the interpretation and application of statutes of this sort. On the one hand, an interpretation ought not to be given to the statute in question which would trim down the fundamental right of the public to read "to the point where a few prurient persons can find nothing upon which their hypersensitive imaginations may dwell." *Commonwealth* v. *Isenstadt,* 318 Mass. 543, 551–552. On the other hand, care must be taken that it be not construed in such a way as to render it incapable of accomplishing the objects intended by the Legislature.

We turn to the story itself. It has to do with life of a poor white farmer and his family on a run down farm in Georgia. The father, Ty Ty Walden, is a pathetic figure with the mentality of a moron. Believing that there is gold on his land, he and two of his sons dig for it incessantly, leaving the raising of cotton to two colored share croppers. Ty Ty, who is pious, dedicates one acre of his land to God and intends to turn over the proceeds of that acre to the church. But he is so busy digging for gold that he never gets around to raising anything on it, and he relocates it from time to time to meet the exigencies of his digging. Ty Ty's sons, daughters, and daughter-in-law become involved in numerous sexual affairs. These lead to quarrels among the brothers, and as the story closes one brother kills another and departs with his shot gun, presumably to kill himself. Ty Ty, who had always tried to keep peace in the family, in despair resumes his digging for gold.

Viewing the book as a whole we find ourselves unable to agree with the conclusion of the trial judge that the book was not obscene, indecent, or impure as those words have

been defined in our decisions. The book abounds in sexual episodes and some are portrayed with an abundance of realistic detail. In some instances the author's treatment of sexual relations descends to outright pornography. Nothing would be gained by spreading these portions of the book on the pages of this opinion.

Evidence was introduced at the hearing below by literary critics, professors of English literature, and a professor of sociology touching the "literary, cultural or educational character" of the book. See § 28F. In general the literary experts regarded the book as a sincere and serious work possessing literary merit. The sociologist was of opinion that the book was of value as a sociological document in its portrayal of life of the so called "poor whites" in the south. The judge, who had the advantage of hearing these witnesses, has indicated in his findings that he accorded considerable weight to their testimony. We accept his findings on this aspect of the case. But the fact that under § 28F evidence may be received as to the "literary, cultural or educational character" of the book does not change the substantive law as to what is obscene, indecent, or impure. Those provisions were undoubtedly inserted to clarify doubts as to the sort of expert evidence that may be received in cases of this type. See *Commonwealth* v. *Isenstadt*, 318 Mass. 543, at pages 558–559. In reaching the conclusion that the book offends against the statute we have taken into consideration the expert testimony described above. In the *Isenstadt* case we recognized that sincerity of purpose and literary merit were not to be entirely ignored and could "be considered in so far as they bear upon the question whether the book, considered as a whole, is or is not obscene, indecent, or impure" (page 554). But as we said in that case, "In dealing with such a practical matter as the enforcement of the statute here involved there is no room for the pleasing fancy that sincerity and art necessarily dispel obscenity. . . . Sincerity and art can flourish without pornography, and seldom, if ever, will obscenity be needed to carry the lesson" (page 553).

Our attention has been directed to two decisions in other jurisdictions in which the book in question has been held not to be obscene under statutes somewhat similar to ours. One of them (*People* v. *Viking Press, Inc.* 147 Misc. [N. Y.] 813) is an opinion by a city magistrate. The other case (*Commonwealth* v. *Gordon,* 66 Pa. D. & C. 101) was decided by a court of first instance in Pennsylvania and was affirmed by the Superior Court on appeal in a per curiam decision, 166 Pa. Super. Ct. 120. A discussion of these decisions would not be profitable. It is enough for present purposes to say that the interpretations placed on the statutes there involved differ materially from that which this court has placed on our statute.

The contention that a decree adjudicating the book as obscene, indecent, or impure would be an abridgment of the rights of freedom of the press guaranteed by the Fourteenth Amendment to the Constitution of the United States requires no discussion. A similar contention was made without success in *Commonwealth* v. *Isenstadt,* 318 Mass. 543, 557–558. What was said there is applicable here.

It follows that the decree below is reversed and a new decree is to be entered adjudicating that the book in question is obscene, indecent, and impure.

*So ordered.*