**UNITED STATES of America,**
Libelant,

v.

**4200 COPIES INTERNATIONAL JOURNAL, Nos. 5 and 11; 500 copies Afrodite, No. 1; 300 bound volumes Helios, issues Nos. 1 to 12, 1953; 500 volumes Tidlosa, No. 1, January, 1955; 2000 copies Sun and Health, International Edition, No. 26, May, 1955; 1500 copies Helios, No. 23, May, 1955; 700 copies Modelstudier, No. 41; 200 copies Paradies, No. 52; and 100 copies Licht Und Schonheit, Heft 11, Jahrang 5, 1954.**

No. 1286.

United States District Court
E. D. Washington, N. D.
Oct. 5, 1955.

William B. Bantz, U. S. Atty., William M. Tugman, Asst. U. S. Atty., Spokane, Wash., for libelant.

C. C. Rowan, Spokane, Wash., for claimant.

DRIVER, Chief Judge.

This is a libel action brought by the United States against a large number of imported publications. The basic question presented is, whether such publications are obscene and, as such, subject to forfeiture, confiscation and destruction under the provisions of Section 1305 of Title 19, U.S.C.A. That section, in part, provides that all persons are prohibited from importing into the United States "any obscene book, pamphlet, paper, writing, * * * print, picture, * * *." It authorizes seizure of prohibited publications by the collector of customs and outlines the procedure for their condemnation in the United States District Court. The section further provides that, "No such articles, whether imported separately or contained in packages with other goods entitled to entry, shall be admitted to entry; and all such articles and, unless it appears to the satisfaction of the collector that the obscene or other prohibited articles contained in the package were inclosed therein without the knowledge or consent of the importer, owner, agent, or consignee, the entire contents of the package in which such articles are contained, shall be subject to seizure and forfeiture as hereinafter provided: * * *."

Attached to the libel of information in this case as Exhibits A, B, and C, are three reports of seizure by the United States Customs Service. Exhibit A shows that on May 3, 1955, two cases of paper bound books were seized, consisting of 300 volumes of Helios and 500 volumes of Tidlosa. The report does not indicate whether the two publications were mixed in the two cases, or all the Helios was in one case and all the Tidlosa in the other. Exhibit B shows seizure on May 11, 1955, of one case of paper bound books containing 4200 copies of International Journal, and 500 copies of Afrodite. Exhibit C shows seizure on May 11, 1955, of one case of paper bound books containing 2000 copies of Sun & Health, 1500 copies of Helios, 700 copies Modelstudier, 200 copies of Paradies, and 100 copies of Licht & Sconheit [sic]. It thus appears that there were 300 volumes of Helios in the seizure Exhibit A, and 1500 copies of the same publication in seizure Exhibit C, but what particular books or periodical issues were in each of the seizures does not clearly appear. Moreover, the "cases" mentioned in the customs reports do not appear to have been kept intact. The United States Marshal's return which is in the file, sets forth a straight listing of the publications taken over by him, with the number of copies of each, without any mention of cases or packages. In this situation it seems impracticable for me to attempt to apply the provision of the statute concerning condemnation of the entire contents of a package if it is found to contain one or more obscene items. I shall, therefore, separately pass upon

each publication involved as plaintiff's (libelant's) [1] Exhibits 1–27, inclusive.

■ Plaintiff contends that the publications are obscene by reason of the photographs of nude men and women with which they are illustrated. The word "obscene" is not capable of exact definition for the reason that its meaning depends upon prevailing mores at different times and in different places.[2] However, in what may be termed the modern cases, the courts are fairly well agreed upon the general principles which should govern in the application of the statute under consideration and comparable enactments which forbid transmission through the United States mails of obscene publications.[3]

■ Nudity is not per se obscene. It may properly be employed in works of art and medical and scientific treatises. A publication is not to be judged by one or two isolated illustrations or passages but is to be regarded as a whole. An effort should be made to ascertain and evaluate the dominant effect, and such dominant effect or tone determines its entire character. The effect upon children or upon persons of extraordinary susceptibility to evil influences is not decisive. The standard to be applied is the judgment of the average, normal, reasonable, prudent person of the community in which the publication is circulated. If, at the time of such circulation, considered as a whole it offends the sense of propriety, morality, and decency of such average person, it is within the bar of the statute. Otherwise it is not. Guided by these general principles, and without having available any definite yardstick that can be applied, the trier of facts must draw the line as best he can between art and pornography—between what is permissible and what is objectionable and obscene.

The difficulty in the present case, I think, arises principally from a difference of viewpoint. The libeled books, with one exception, are nudist publications designed to portray nudist practices and to secure new converts to the movement. Adherents of the cult conscientiously do not regard as objectionable the full display in mixed company of nude male and female bodies. But nudism is a deviation from the norm at the present time in the United States. Its practitioners are very much in the minority and cannot be said to represent the common viewpoint in this country. The average American, except for works of art or illustrations in medical journals and the like, regards stark nudity, with brazen display of the adult male and female genitalia, as indecent and shocking. This difference of viewpoint was brought out by the testimony of the witnesses in the trial. The defendant called two women, obviously quite respectable—one a mother and the other a grandmother, both members of a nudist organization—who testified that they saw nothing objectionable in the publications in evidence. On the other hand, two other respectable housewives, who appeared to be representative of the average person of the community, examined the same publications and found them to be indecent and obscene.

■ It is my conclusion that, with some exceptions to which I shall call attention later on, the publications in evidence have the dominant effect and purpose of showing not only without re-

---

1. For convenience in the trial, the libelant was called the plaintiff and the claimant the defendant. The same designations will be applied in this opinion.

2. See United States v. Kennerley, D.C., 209 F. 119, 121. Judge Learned Hand, the author of the opinion therein, put the following query: "If there be no abstract definition, such as I have suggested, should not the word 'obscene' be allowed to indicate the present critical point in the compromise between candor and shame at which the community may have arrived here and now?"

3. See for example, United States v. One Book Entitled Ulysses, 2 Cir., 72 F.2d 705; Parmelee v. United States, 72 App. D.C. 203, 113 F.2d 729; Burstein v. United States, 9 Cir., 178 F.2d 665; and Sunshine Book Co. v. Summerfield, D.C., 128 F.Supp. 564.

straint, but with emphasis on normally private areas, the nude figures of both men and women and that, to the average adult person, they are obscene within the meaning of the statute. In reaching that conclusion I have taken many factors into consideration. The character of the printed text in the publications is uniformly unobjectionable, although much of it is in a foreign language and therefore not intelligible to most persons in this country. I have taken into account the relationship of the pictures to the printed articles, the size of the nude figures in the pictures, the relative number of full front and side or back views, and the extent to which the genitals and pubic areas have been covered or minimized by position, posture, distance from the camera, use of light and shade, et cetera.

The libeled books were imported for commercial purposes and were to be sold at a profit through the usual channels of distribution, principally on news stands throughout the country. They were not, therefore, to be limited to members of the nudist cults, and must be judged by their effect upon the general public. In this connection, it is interesting to note that of the twenty-seven publications introduced in evidence as exhibits for the plaintiff, twenty have on the front cover prominently displayed nude pictures of well-developed, shapely young women. One would be naive, indeed, not to appreciate the commercial value of displaying such front-cover material on the news stands. Although an avowed purpose of the books is to explain the nudist movement, its principles and its practices, there are relatively very few photographs of the mixed groups of all ages which ordinarily would be found in a nudist park. The great preponderance of the illustrations depicts shapely, well-developed young women appearing in the nude, mostly in front exposures.

The issues of Modelstudier which are in evidence, I think, are clearly within the prohibition of the statute. The publication does not even appear to have any connection with the nudist movement. As the name implies, ostensibly it supplies models for the use of art students.[4] Some of the numbers contain no printed matter at all, and in others the text is wholly, or in large part, in a foreign language. They contain many large closeup, full front-view photographs of nude men and women, plainly showing the genital and pubic areas.

Without going into further detail, I find all of the publications, plaintiff's Exhibits 1–27, inclusive, obscene and subject to condemnation and destruction, with the following exceptions: Plaintiff's Exhibit 2, De Neue Zeit, is not mentioned at all in the report of seizure of the customs service, but the Marshal's return lists one hundred copies. It cannot be condemned without a record showing that it was a part of the seizure made by the customs service under the statute. I am of the view that, plaintiff's Exhibit 3, Paradies, and plaintiff's Exhibit 4, Paradies, and plaintiff's Exhibit 16, Afrodite, are not obscene. In these publications some of the figures are clothed, and there is a much larger proportion of side and rear views. There are some shadow silhouettes, and for the most part, the critical areas are concealed, shaded, or minimized by posture or lighting. Also, even to one who claims no expert knowledge in the field there appears to be a good-faith striving for artistic values in the posing and treatment of the subjects in some of the photographs. While they contain a few illustrations which I should regard as objectionable if considered by themselves, I cannot say that, taken as a whole, the dominant effect or tone of the publications is obscene within the meaning of the statute.

Findings in accordance with the views herein expressed may be presented.

---

4. The following statement appears in plaintiff's Exhibit 15, Modelstudier NR41: "This publication is primarily planned for artists and draughtsmen who desire to better their model drawing."