**TIMES FILM CORPORATION,**
Plaintiff-Appellant,

v.

**CITY OF CHICAGO et al., Defendants-Appellees.**
No. 11776.

United States Court of Appeals
Seventh Circuit.
May 21, 1957.

Abner J. Mikva, Chicago, Ill., Felix Bilgrey, New York City, for appellant.

John C. Melaniphy and Sydney R. Drebin, Robert J. Collins, Asst. Corp. Counsel, Chicago, Ill., of counsel, for appellees.

Before LINDLEY, SWAIM and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Plaintiff, a New York corporation, filed its complaint in the district court, on the ground of diversity of citizenship between it and the defendants, city of Chicago, its mayor, and its commissioner of police.

In count I, it alleges that it had the exclusive right to exhibit in said city a motion picture film entitled "The Game of Love", and that, pursuant to sections 155–1 to 155–7 of the municipal code of the city, it applied to defendant O'Connor for a permit to exhibit the film, but that he declined to do so because "it is not acceptable to standards of decency, with immorality featured and dialogue unfit". It further alleges that its appeal from said decision to defendant Daley was denied and a permit was refused. It is charged that O'Connor and Daley had a duty to grant the permit since the film does not come within the description of films for which said defendants have the duty to refuse permits and that their actions in denying the permit are unlawful and void in that they far exceed the discretion vested in them by said ordinance.

Count II charges that the denial of the permit was an infringement of plaintiff's constitutional rights to freedom of speech and the press and to engage in lawful business activities in said city.

In count III plaintiff charges that said municipal ordinance violates on its face the first and fourteenth amendments to the Constitution of the United States and unlawfully abridges the right protected therein.

Attached to the complaint is a film of said motion picture, as well as a copy of the ordinance.

The ordinance, in its relevant parts, makes it unlawful for a person to put into circulation any motion picture film for exhibition within the city, without first securing a permit therefor from the commissioner of police. It provides a

penalty for a violation of the ordinance. It also provides that before any such permit is granted, an application therefor shall be made and a film of the picture shall be shown to the commissioner, who shall inspect it, or cause it to be inspected, whereupon he shall grant or deny a permit. In addition, section 155–4 provides, *inter alia,* "if a picture * * * is immoral or obscene, * * * it shall be the duty of the commissioner of police to refuse such permit; * * *. In case the commissioner of police shall refuse to grant a permit as hereinbefore provided, the applicant for the same may appeal to the mayor. * * * [whose action] shall be final." [1]

The answer of defendants, seeking to justify the refusal of a permit to plaintiff, averred that the film was violative of section 155–4 "in that it is immoral and obscene * * *."

A master in chancery, to whom the district court referred this case, received and reported to the court the testimony of various witnesses and his conclusions and recommendations.

The district court considered that report,[2] viewed the film, and found that it is obscene and immoral, that the ordinance is not violative of the first and fourteenth amendments to the Constitution of the United States, and that the denial of a permit did not violate any right of plaintiff under said amendments. It dismissed the complaint. From that decree plaintiff appealed.

 1. Expression by means of motion pictures is included within the free speech and free press guaranty of the first and fourteenth amendments.

See Joseph Burstyn, Inc., v. Wilson, 343 U.S. 495, at page 502, 72 S.Ct. 777, at page 781, 96 L.Ed. 1098, where the court said:

"It does not follow that the Constitution requires absolute freedom to exhibit every motion picture of every kind at all times and all places. That much is evident from the series of decisions of this Court with respect to other media of communication of ideas. Nor does it follow that motion pictures are necessarily subject to the precise rules governing any other particular method of expression. Each method tends to present its own peculiar problems. But the basic principles of freedom of speech and the press, like the First Amendment's command, do not vary. Those principles, as they have frequently been enunciated by this Court, make freedom of expression the rule. * * *"

In that case, 343 U.S. at 506, 72 S.Ct. at page 782, the court disclaimed any intention to decide "whether a state may censor motion pictures under a clearly drawn statute designed and applied to prevent the showing of obscene films." It held only that, under said amendments, a state may not ban a film on the basis of a censor's conclusion that it is "sacrilegious."

In an earlier case, it held that the primary requirements of decency may be enforced against obscene publications. Near v. State of Minnesota, 283 U.S. 697, 716, 51 S.Ct. 625, 75 L.Ed. 1357.

In Chaplinsky v. State of New Hampshire, 315 U.S. 568 at page 571, 62 S.

1. Section 155–5 provides, *inter alia,* "In all cases where a permit for the exhibition of a picture or series of pictures has been refused under the provisions of the preceding section because the same tends towards creating a harmful impression on the minds of children, where such tendency as to the minds of adults would not exist if exhibited only to persons of mature age, the commissioner of police may grant a special permit limiting the exhibitions of such picture or series of pictures to persons over the age of twenty-one years; * * *."

2. It is undisputed that the commissioner of police personally viewed the film and that the persons to whom he referred it viewed it twice, once before they originally disapproved it and again after an appeal to the mayor had been taken. The second view was taken at the mayor's request and their second disapproval was reported to him. He then rejectetd the application for a permit.

Ct. 766 at page 769, 86 L.Ed. 1031, the court said:

> "Allowing the broadest scope to the language and purpose of the Fourteenth Amendment, it is well understood that the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem. These include the lewd and obscene, * *."

We hold that the public exhibition of obscene moving pictures may be barred by proceedings under a proper statute or ordinance enacted pursuant to the authority of a state, and that the rights of the exhibitor of such a picture under the first and fourteenth amendments of the Constitution of the United States are not thereby violated.

2. Such a legislative enactment must be clear as to its scope and meaning. In determining the meaning thereof we are required to consider the words used in the enactment and any interpretation thereof made by the highest court of the state. State of Minnesota ex rel. Pearson v. Probate Court, 309 U.S. 270, 273, 60 S.Ct. 523, 84 L.Ed. 744.

The ordinance now under attack, as we have seen, uses the words "immoral or obscene." The Illinois Supreme Court has held, in speaking of this ordinance, that these words are synonymous and that a motion picture is obscene or immoral, within the meaning of the ordinance, if, when considered as a whole, its calculated purpose or dominant effect is substantially to arouse sexual desires, and if the probability of this effect is so great as to outweigh whatever artistic or other merits the film may possess. In making this determination the film must be tested with reference to its effect upon the normal, average person. American Civil Liberties Union v. City of Chicago, 3 Ill.2d 334, 347, 121 N.E.2d 585.

With this interpretation of the words "obscene" and "immoral" read into the ordinance now before us, we believe that the ordinance is not vague, as contended by plaintiff. Those words are precise and they constitute a proper test in the case at bar.

3. It is true that society's *application* of such a test to specific conduct or things may and does often vary according to the period of time when, and also as to the place where, the test is applied. On a public beach in America 50 years ago a person would have been considered immorally clothed if he or she had appeared in a bathing suit of a kind which today is commonly accepted as proper. The nature and extent of raiment now considered proper when worn in some parts of Africa would presently be considered immoral if worn upon the streets of Chicago. If a girl in a theatrical production in Boston had said, 50 years ago, "I am pregnant", the producer would have been charged with staging an immoral show. Today in America—even in Boston—the same incident would go unchallenged.

Despite these time and place variations in the consensus of people, there is at any given time and place substantial agreement as to what conduct or things are proscribed by the test as obscene and immoral. A violation of the proscription is generally and promptly detected and protested by ordinary persons, whether, for instance, it be an indecent display upon a public street, an improper remark in the living room of a home, or a vile and filthy exhibition of a person or persons at a public picnic or baseball game. The ordinary person knows what is obscene and immoral. That knowledge is a workable basis for regulation of such matters and it may be utilized by the chosen representatives of the people, in a state or political subdivision thereof, as a basis for legislative action aimed at the suppression of public obscenity and immorality. The public exhibition of moving pictures falls within the ambit of such regulation. The ordinance in ques-

tion is the result of such action by the city council of Chicago.

The first and fourteenth amendments of the federal Constitution do not, and were never intended to, shield public peddlers of obscenity and immorality. The ordinance now under attack is not unconstitutional on the grounds asserted.

██ 4. The film, as an exhibit in this case, was projected before and viewed by us. We found that, from beginning to end, the thread of the story is supercharged with a current of lewdness generated by a series of illicit sexual intimacies and acts. In the introductory scenes a flying start is made when a 16 year old boy is shown completely nude on a bathing beach in the presence of a group of younger girls. On that plane the narrative proceeds to reveal the seduction of this boy by a physically attractive woman old enough to be his mother. Under the influence of this experience and an arrangement to repeat it, the boy thereupon engages in sexual relations with a girl of his own age. The erotic thread of the story is carried, without deviation toward any wholesome idea, through scene after scene. The narrative is graphically pictured with nothing omitted except those sexual consummations which are plainly suggested but meaningfully omitted and thus, by the very fact of omission, emphasized. The words spoken in French are reproduced in printed English on the lower edge of the moving film. None of it palliates the effect of the scenes portrayed.

We do not hesitate to say that the calculated purpose of the producer of this film, and its dominant effect, are substantially to arouse sexual desires. We are of the opinion that the probability of this effect is so great as to outweigh whatever artistic or other merits the film may possess. We think these determinations are supported by the effect which this film would have upon the normal, average person. There is nothing in the record before us to indicate that the commissioner of police or the persons to whom he referred the film for inspection are not normal, average persons. The record indicates the contrary. We agree with the opinions of the judge of the district court, the police commissioner and the persons whom he caused to inspect the film. All of them viewed the picture. They found it obscene and immoral.

We, therefore, conclude that the ordinance, as written and as applied to the film in this case, is not violative of the rights of plaintiff under either the first or fourteenth amendment of the Constitution of the United States.

For the reasons hereinbefore set forth, the decree of the district court is affirmed.

Affirmed.