COMMONWEALTH *vs.* ANTONE T. MONIZ
(and four companion cases[1]).

Bristol.    May 6, 1957. — June 4, 1957.

Present: WILKINS, C.J., RONAN, WILLIAMS, WHITTEMORE & CUTTER, JJ.

*Practice, Criminal,* Ordering verdict.    *Obscenity, Indecency or Impurity.*

A motion picture film exhibited to the public is obscene, impure or in-
decent within the prohibitions of G. L. (Ter. Ed.) c. 272, § 28A, in-
serted by St. 1945, c. 278, § 1, and § 32, if it has a substantial tendency
to deprave or corrupt its viewers by inciting lascivious thoughts or
arousing lustful desires. [181]
At a jury trial of complaints charging the defendants with statutory vio-
lations by exhibition to the public of an obscene, impure or indecent
motion picture film, which was viewed by the judge and jury, it was
error on the part of the judge to direct a verdict of guilty on each com-
plaint at the conclusion of the evidence where, although the defendants
admitted the objective facts relating to the exhibition of the film, they
denied the material fact that it was obscene, impure or indecent.
[180, 181]

FIVE COMPLAINTS, received and sworn to in the Second
District Court of Bristol on January 4, 1956, January 5,
1956, and January 9, 1956.

Upon appeal to the Superior Court, the cases were tried
before *Kalus,* J., a District Court judge sitting under statu-
tory authority.

*Harry P. Haveles,* for the defendant Rogers.

*James A. Heaney,* for the defendant Moniz.

*John J. Harrington,* Assistant District Attorney, for the
Commonwealth.

WILLIAMS, J.   The defendants were tried in the Superior
Court after appealing from convictions in a District Court
on the following complaints:

Antone T. Moniz, on January 3, 1956, "being a motion
picture operator, did present a show or entertainment sug-

[1] One of the companion cases is against the same defendant and three are
against Benjamin P. Rogers.

gestive of lewdness, obscenity, indecency, immorality or impurity . . . in violation of section 32 chapter 272 of the General Laws."

Antone T. Moniz, on January 3, 1956, "did have in his possession for the purpose of exhibition and did publish and display certain obscene, indecent and impure prints, images, pictures and other things, to wit, — a series of motion picture films and did project, publish, display and exhibit said obscene, indecent and impure prints, images and pictures on a motion picture screen in violation of section 28A chapter 272 of the General Laws as amended."

Benjamin P. Rogers, on January 3, 1956, "being a manager, agent or employee did prepare, advertise, give or present a certain show or entertainment suggestive of lewdness, obscenity, indecency, immorality or impurity and in violation of chapter 272 section 32 of the General Laws."

Benjamin P. Rogers, on January 3, 1956, "did import, publish, procure or have in his possession obscene, indecent or impure prints, images, pictures and other things, to wit, — a series of motion picture films for the purpose of exhibition and did exhibit said obscene, indecent and impure prints, images and pictures by means of projecting said films on a screen in violation of section 28A chapter 272 of the General Laws as amended."

Benjamin P. Rogers, on January 1, 1956, "being the Lord's Day, did set up, offer to view, or participate in setting up and offering to view a certain public entertainment, to wit, — an indecent and impure picture by means of projecting said pictures on a screen said entertainment not being in keeping with the character of the day and being inconsistent with its due observance and in violation of chapter 136 section 3 of the General Laws."

The complaints were phrased substantially in the language of the statutes to which they referred. There was evidence that Rogers as agent for a film distributing company arranged for, and on January 1, 2, and 3, 1956, caused a public showing at a theatre in Fall River of a motion picture entitled "Garden of Eden." He arranged for news-

paper and poster advertising, rented the theatre and its personnel, and employed the defendant Moniz to operate the projection machine. The film itself and samples of newspaper and poster advertising were in evidence and the judge and jury viewed a showing of the film in its entirety. It depicted the experiences of an elderly man, a young woman and a child in a so called nudist colony. Members of the colony were shown in the nude, walking in the woods, bathing in the lake, lying on the shore, and playing games. Except for several scenes in which men and women were shown naked to the waist the pictorial representations of unclothed persons were views photographed from the rear.

At the conclusion of the evidence and subject to the exceptions of the respective defendants the judge directed the jury to return a verdict of guilty in each case. The only question before us is whether this was error. "Issues of fact joined upon an indictment or complaint shall, in the superior court, be tried by a jury . . . unless the person indicted or complained against elects to be tried by the court as provided by law." G. L. (Ter. Ed.) c. 278, § 2. The object of the statute is to secure to the accused a benefit which he may avail himself of or waive at his own election. *Jones* v. *Robbins,* 8 Gray, 329, 341. *Commonwealth* v. *Kemp,* 254 Mass. 190, 191–192. *Commonwealth* v. *Rowe,* 257 Mass. 172, 180. See art. 12 of the Declaration of Rights; G. L. (Ter. Ed.) c. 263, § 6. Only where there is no issue of fact for the jury because of an agreement of all the facts material to the proof of the crime charged can a judge properly direct a verdict of guilty. See *Commonwealth* v. *Gardner,* 241 Mass. 86; *Commonwealth* v. *Ross,* 248 Mass. 15.

In the instant cases the defendants admitted the objective facts relating to the exhibitions of the picture but denied that it was obscene, impure or indecent. Although there is some variance in the language of the different statutes on which the respective complaints were founded these were the essential qualities which the film must have been found to possess if its showing was to be held unlawful.

It was said in *Commonwealth* v. *Isenstadt,* 318 Mass. 543, that the test of obscenity, impurity and indecency in respect to a novel is primarily whether the book has a substantial tendency to deprave or corrupt its readers by inciting lascivious thoughts or arousing lustful desires and that this question will commonly be one of fact in each case. The same test is properly applicable to the determination of the character of a motion picture which is exhibited to the public. See *Commonwealth* v. *Buckley,* 200 Mass. 346, 353. Plainly the effect of the picture upon its viewers was a matter requiring a finding by a jury and not a ruling by a judge. See *Commonwealth* v. *Sookey,* 236 Mass. 448, 452.

It was error to direct the verdicts of guilty.

*Exceptions sustained in each case.*