COMMONWEALTH *vs.* ANTONE T. MONIZ
(and four companion cases [1]).

Bristol.   November 3, 1958. — January 22, 1959.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, &
CUTTER, JJ.

*Obscenity, Indecency or Impurity.   Constitutional Law,* Freedom of speech,
Freedom of the press.   *Motion Picture.*

Discussion of cases in which the Supreme Court of the United States
    laid down the standards to be applied in determining whether material
    is obscene and so not protected by the constitutional guaranties of
    freedom of speech and freedom of the press, and recognized and applied
    the principle that appellate courts must themselves judge the nature of
    the material in order to determine such constitutional issues.   [445–449]
A motion picture film exhibited to the public which as a whole was sub-
    stantially free of erotic appeal apart from the effect of merely showing
    naked men and women living together in a nudist colony and in the
    presence of nonnudists was ruled by this court on its own judgment
    not to be obscene.   [449–450]

[1] One of the companion cases is against the same defendant and three are
against Benjamin P. Rogers.

FIVE COMPLAINTS, received and sworn to in the Second District Court of Bristol on January 4, 1956, January 5, 1956, and January 9, 1956.

Following trial in the Superior Court on appeal and the decision by this court reported in 336 Mass. 178 sustaining the defendants' exceptions, there was a new trial of the cases before *Callan,* J., a District Court judge sitting under statutory authority.

*Harry P. Haveles, (James A. Heaney* with him,) for the defendants.

*John W. McIntyre,* Assistant District Attorney, for the Commonwealth.

WHITTEMORE, J.   In *Commonwealth* v. *Moniz,* 336 Mass. 178, on June 4, 1957, and before the decision of *Roth* v. *United States,* 354 U. S. 476, we sustained the exceptions of the defendants to the direction of verdicts of guilty under complaints charging violation of G. L. c. 272, §§ 28A and 32, c. 136, § 3, in connection with the public showing of a motion picture entitled "Garden of Eden" in a theatre in Fall River on January 1, 2 and 3, 1956.   Thereafter a jury found each defendant guilty.   These are the defendants' exceptions to the denial of their motions for directed verdicts of not guilty.

The evidence showed that on January 3 "there was a mixed audience, including several young people who appeared to be eighteen or nineteen years old."

The statutes, the complaints, and the motion picture are described in the earlier opinion.   While the wording of the several statutory provisions varies, the issue presented under each complaint is whether the picture could reasonably and constitutionally be found to be obscene.   *Commonwealth* v. *Isenstadt,* 318 Mass. 543, 549–550.   *Roth* v. *United States,* 354 U. S. 476.   In our prior decision (336 Mass. 178, 181) we said that the test for a motion picture, as for a book, is whether there is a substantial tendency to deprave or corrupt those exposed to it by inciting lascivious thoughts or arousing lustful desires.

We have described the picture (*ibid.,* p. 180), which we

have seen, as follows: "It depicted the experiences of an elderly man, a young woman and a child [nonnudists] in a so called nudist colony. Members of the colony were shown in the nude, walking in the woods, bathing in the lake, lying on the shore, and playing games. Except for several scenes in which men and women were shown naked to the waist the pictorial representations of unclothed persons were views photographed from the rear."

Apart from the effect of the showing of nudity, the picture is substantially free of erotic appeal. The single episode (other than the general nudity) specified by the Commonwealth as sexually stimulating is not significant in view of the requirement to judge the picture as a whole in the light of current customs and habits of thought. *Commonwealth* v. *Isenstadt*, 318 Mass. 543, 548–549, 551. The plot is far-fetched and thin, and the picture is dull. Notwithstanding the declared patronage of the Sun Bathers' Association of America and the warranted assumption that the picture exemplifies the tenets of the Association, the conclusion could reasonably be drawn that the promoters of the picture relied on the curiosity of the general public in respect of life inside a nudist colony for its box office success. But that is not a reason for not judging the picture for what it is. We agree with the Commonwealth that the advertised limitation, "For Adults Only," and some other aspects of the advertising could be found to have a tendency to attract persons having a prurient interest. But there was a lawful reason for a determination that children should be excluded (see *Commonwealth* v. *Isenstadt*, 318 Mass. 543, 551–552; *Butler* v. *Michigan*, 352 U. S. 380); the complaints are not for misleading prospective patrons (see proposal of Model Penal Code Tent. Draft No. 6, § 207.10 [6], "Promoting Sale of Material Represented as Obscene"); and the inducing acts here could not be found to be obscene publications.

We have no doubt, therefore, that if this picture can be found obscene, it is only because it shows naked men and women together and in the presence of nonnudists.

We assume, and believe, that such a showing is greatly
offensive to many citizens as violative of accepted standards
of propriety and decent behavior. But a work may not be
adjudged obscene only because it is offensive in this way.
"The prohibitions of the statute are concerned with sex
and sexual desire." *Commonwealth* v. *Isenstadt,* 318 Mass.
543, 550. See *Sunshine Book Co.* v. *Summerfield,* 355 U. S.
372, discussed *infra.*

Effect being the test, and current community standards
relevant, the jury "representing a cross section of the people
. . . should commonly be a suitable arbiter" (318 Mass.
543, 551). It has been said that the jury in such cases is
"peculiarly competent." *Kingsley Books, Inc.* v. *Brown,*
354 U. S. 436, 448. See Chafee, Government & Mass Com-
munications, 219–221. For discussions of the difficulties of
applying and reviewing the application of the subjective test
see 52 Harv. L. Rev. 40, 73–74; 38 Minn. L. Rev. 295,
368–395. If this principle were applied without qualification
it might perhaps be deemed to sustain the jury verdicts on
the premise that they may reflect a community view that
any showings of nudity have a tendency to cause lascivious
thoughts and to arouse lustful desires. Having regard for
the status of nonlascivious nudity as established in the
decided cases (see *Excelsior Pictures Corp.* v. *Regents of the
Univ. of the State of N. Y.* 3 N. Y. 2d 237, 240; *United States*
v. *4200 Copies Intl. Journal,* 134 F. Supp. 490, 494), we
question whether this view could be deemed a permissible
application of the statutory standard. In any event we are
satisfied that the constitutional issue is controlling.

In *Joseph Burstyn, Inc.* v. *Wilson,* 343 U. S. 495, 502, the
Supreme Court determined that "expression by means of
motion pictures is included within the free speech and free
press guaranty of the First and Fourteenth Amendments."
The majority opinion in *Roth* v. *United States,* 354 U. S. 476
(applicable also to *Alberts* v. *California,* decided therewith),
holding that obscenity is not protected, stated (p. 488),
"The fundamental freedoms of speech and press have con-
tributed greatly to the development and well-being of our

free society and are indispensable to its continued growth. Ceaseless vigilance is the watchword to prevent their erosion by Congress or by the States. The door barring federal and state intrusion into this area . . . must be kept tightly closed and opened only the slightest crack necessary to prevent encroachment upon more important interests. It is therefore vital that the standards for judging obscenity safeguard the protection of freedom of speech and press for material which does not treat sex in a manner appealing to prurient interest." The court also said (p. 484), "All ideas having even the slightest redeeming social importance — unorthodox ideas, controversial ideas, even ideas hateful to the prevailing climate of opinion — have the full protection of the guaranties, unless excludable because they encroach upon the limited area of more important interests. But implicit in the history of the First Amendment is the rejection of obscenity as utterly without redeeming social importance." The court laid down the constitutional standards to be applied in determining the issue.[1] The opinion dealt with plainly pornographic material ("the commercial exploitation of the morbid and shameful craving for materials with prurient effect" — Warren, C.J., p. 496). But the decision was broadly stated and Harlan, J. (p. 496), expressed the fear that constitutional protections of free speech had been weakened. He made the point, relevant here, that, in determining whether a particular work may

---

[1] The test, the court said, is "whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest" (p. 489). In defining "prurient interest" the court appears to have added the qualification that the material must appeal to a shameful or morbid interest and exceed the customary limits of candor. The court said (p. 487), "Obscene material is material which deals with sex in a manner appealing to prurient interest . . . [and in footnote 20] [w]e perceive no significant difference between the meaning of obscenity developed in the case law and the definition of the A. L. I., Model Penal Code, § 207.10 (2) (Tent. Draft No. 6, 1957), viz.: '. . . A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, i.e., a shameful or morbid interest in nudity, sex, or excretion, and if it goes substantially beyond customary limits of candor in description or representation of such matters. . . .' See Comment, *id.,* at 10, and the discussion at page 29 et seq." But see (*ibid.*) for view of the authors that the draft rejects the prevailing test of tendency to arouse lustful thoughts or desires and substitutes a different test, and see dissenting opinion of Harlan, J., 354 U. S. 496, 499–500, noting this.

be suppressed constitutionally, the appellate court must make a factual judgment for itself.[1]  354 U. S. 476, 497–498. Later cases show, we think, that his fear, at least in aspects here relevant, was unfounded and that notwithstanding the majority's reference in the *Roth* case to the "average person, applying contemporary community standards" (p. 489), the court recognizes and applies the principle that courts must themselves judge the pruriency of the material to determine the constitutional issue.

In *Sunshine Book Co.* v. *Summerfield*, 355 U. S. 372, the court granted certiorari to review the judgment of the Court of Appeals that nudist magazines for general distribution which contained pictures of naked men, women and children accompanying textual matter which the Post Office Department had found not to be obscene and which advocated and explained nudism could be found to be obscene because of the pictures, so that the magazines could lawfully be barred from the mails.  Fahy, J., in a concurring opinion, had said, "Pictures permeate the magazine and the pictures are dominated by those which the contemporary community deems indecent."  249 F. 2d 114, 120 (Ct. App. D. C.).  The Supreme Court granted certiorari forthwith and summarily, without opinion, reversed the judgment on the authority of the *Roth* case.

Perhaps the disposition of the *Sunshine Book* case means only that the nonsalacious presentation of nudity cannot reasonably be found obscene (see *Commonwealth* v. *Isenstadt*, 318 Mass. 543, 557–558).  But however the semantic em-

---

[1] ". . . [E]very such suppression raises an individual constitutional problem, in which a reviewing court must determine for *itself* whether the attacked expression is suppressable within constitutional standards.  Since those standards do not readily lend themselves to generalized definitions, the constitutional problem in the last analysis becomes one of particularized judgments which appellate courts must make for themselves.  I do not think that reviewing courts can escape this responsibility by saying that the trier of the facts, be it a jury or a judge, has labeled the questioned matter as 'obscene,' for, if 'obscenity' is to be suppressed, the question whether a particular work is of that character involves not really an issue of fact but a question of constitutional *judgment* of the most sensitive and delicate kind. . . . I do not understand how the Court can resolve the constitutional problems now before it without making its own independent judgment upon the character of the material upon which these convictions were based."

phasis is laid, the case shows that the nudist life may not only be discussed, but may be pictured, and it is thus important in determining our disposition of the issue before us. We recognize that there may be reasons for imposing certain limitations on the use of motion pictures to express ideas which might not be applicable to books and magazines. But we do not think that such a qualification would be significant here where there was no pruriency, and no such exhibition to the motion picture audience as would raise a question under G. L. c. 272, § 53. And see *Times Film Corp.* v. *Chicago,* 355 U. S. 35 (note 2, page 8, *infra*).

In *Mounce* v. *United States,* 247 F. 2d 148, 149 (9th Cir.), the Court of Appeals in affirming a judgment of forfeiture of illustrated nudist publications, seized by the Customs Service, had adopted the opinion below (*United States* v. *4200 Copies Intl. Journal,* 134 F. Supp. 490) including, as the standard of obscenity, this test: "If . . . considered as a whole it offends the sense of propriety, morality, and decency of . . . [the average, normal, reasonable, prudent person of the community] it is within the bar of the statute." On the petition for certiorari (355 U. S. 180) the Solicitor General confessed error and the case was remanded to the District Court for consideration in the light of the *Roth* case.

The rulings which may be deemed implied in *One, Inc.* v. *Olesen,* 355 U. S. 371,[1] and *Times Film Corp.* v. *Chicago,* 355 U. S. 35,[2] also summarily reversed on the authority of the

---

[1] The judgment reversed (241 F. 2d 772) had upheld the exclusion from the mails of a magazine dealing with homosexuality which included material which, as had been found, was obscene, and which we think would unquestionably have supported a finding of obscenity under the usual test. Compare *Commonwealth* v. *Friede,* 271 Mass. 318; *Commonwealth* v. *Isenstadt,* 318 Mass. 543, 557–558; *Attorney Gen.* v. *"God's Little Acre,"* 326 Mass. 281, 285. See Literature, The Law of Obscenity, and the Constitution, Lockhart and McClure, 38 Minn. L. Rev. 295, 387.

[2] The judgment reversed had sustained the city censor in barring a film whose "dominant effect . . . [was] substantially to arouse sexual desires" (244 F. 2d 432, 436 [7th Cir.]). The different status of censorship as prior restraint is an important distinction. See *Brattle Films, Inc.* v. *Commissioner of Pub. Safety,* 333 Mass. 58; *Near* v. *Minnesota,* 283 U. S. 697, 713–719; *Holmby Prods. Inc.* v. *Vaughn,* 350 U. S. 870; *Superior Films, Inc.* v. *De-*

decisions made in the *Roth* case, are not so directly applicable as the holding of the *Sunshine Book* case, but the intention to require strict application of the constitutional standard is, we think, reaffirmed by the action of the court.

Our view of "Garden of Eden" is substantially that taken by the majority of the New York Court of Appeals as stated by Desmond, J., in *Excelsior Pictures Corp.* v. *Regents of the Univ. of the State of N. Y.* 3 N. Y. 2d 237, 239–240, 242. "There is nothing sexy or suggestive about it. It has been shown in 36 States and in many foreign countries. In it the nudists are shown as wholesome, happy people in family groups practising their 'sincere if misguided theory that clothing, when climate does not require it, is deleterious to mental health by promoting an attitude of shame with regard to natural attributes and functions of the body' (American Law Institute, Model Penal Code, Tentative Draft No. 6, p. 35). . . . [The New York censors] rejected the film . . . on the ground that it is 'indecent'. These censors, however, did not declare it to be obscene as, indeed, they could not. . . . [T]his picture cannot lawfully be banned since it is not obscene in the sense in which the law has used that term for centuries. Nothing sexually impure or filthy is shown or suggested in 'Garden of Eden' . . . . Nudity in itself and without lewdness or dirtiness is not obscenity in law or in common sense. . . . Even the strictest moralists tell us that 'an obscene nude is a nude that allures' (Vermeesch, Theologiae Moralis, 1936, p. 94)." In answering a contention of the minority, the court said (p. 245) that even if the practice of nudism were criminal it does not follow that every picturing of such activity is criminal. "The showing of crimes in book, play or cinema is evil only when it is done in a dirty way or when it glori-

*partment of Educ. of Ohio*, 346 U. S. 587, 588; *Kingsley Books, Inc.* v. *Brown*, 354 U. S. 436, 445, and dissenting opinions 445–448. See also *Kingsley Intl. Pictures Corp.* v. *Regents of the Univ. of the State of N. Y.* 4 N. Y. 2d 349 (censorship of motion picture "Lady Chatterley's Lover" sustained by majority opinion). On appeal, review was granted, 358 U. S. 897. [Reversed 360 U. S. 684, June 29, 1959. — REPORTER.]

fies the criminal act. So to characterize 'The Garden of Eden' is impossible."

The subject and the presentation being nonsalacious in our judgment, we rule that the showing of this uninteresting portrayal of how nudists live normal lives notwithstanding their nakedness, however offensive to "the prevailing climate of opinion" (*Roth* v. *United States, supra,* p. 484) was not an offence which can be adjudged criminal.

The question here decided was not necessarily presented by the earlier exceptions. See 336 Mass. 178, 181.

*Exceptions sustained.*
*Verdicts set aside.*
*Judgments for the defendants.*