ROGER AMADO *vs.* COMMONWEALTH.

Suffolk.   November 1, 1965. — December 7, 1965.

Present: SPALDING, CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Practice, Criminal,* Waiver, Assent to procedure, Preliminary hearing. *Error,* Whether error harmful. *Waiver.*

No prejudice to a defendant in a criminal case appeared in a late arraignment of a codefendant in the presence of the jury.   [718]

On writ of error after conviction of the defendant at the trial of an indictment, it was held that, where the judge early in the trial ruled that it must "start . . . over" for a certain reason, any objection of the defendant to proceeding to trial anew with the same jury, not resworn, was effectively waived by verbal consent to such procedure given by his counsel in his presence [718–719]; and that absence of the defendant from a voir dire in the judge's lobby for a brief period before he was brought to the voir dire by direction of the judge was waived where no request was made to have the defendant present at the voir dire at its outset and there was no objection at any time to his brief absence therefrom [722].

PETITION for a writ of error filed in the Supreme Judicial Court for the county of Suffolk on December 9, 1964.

---

[2] See later amendments of which the more recent is in St. 1964, c. 470, § 1.

The case was reserved and reported by *Cutter, J.,* without decision.

*Helen Mejan* for the petitioner.

*Warren K. Kaplan,* Assistant Attorney General, for the Commonwealth.

CUTTER, J. This is a petition for a writ of error by Amado who was sentenced on June 27, 1963, to a term of years for armed robbery. A single justice found the facts and reserved and reported the case for the decision of the full court. The record includes the transcript of the trial and the docket in the Superior Court. There is no indication that any review on issues of law was sought by any usual appellate process (i.e. by bill of exceptions or under G. L. c. 278, §§ 33A–33G).

1. Amado and one Pina were indicted for assault on November 27, 1961, "armed with a dangerous weapon, to wit: a toy pistol" with intent to rob and robbery of one Silva. The trial commenced on June 26, 1963. Each defendant was represented by separate counsel. The Commonwealth made an opening. One witness (Silva) was fully heard. A second witness (one Troy, a police officer) was sworn and started to testify. Shortly before a noon recess the jury were excused, to permit in their absence a voir dire in open court concerning the admissibility of certain statements alleged to have been made by Amado.

After the noon recess, it was brought to the attention of the judge, in the presence of the jury, that Pina had never been arraigned. The indictment was read to Pina who stated that he stood "mute" on the charge. The judge ordered the entry of a plea of not guilty and stated to the jury that he "must declare a mistrial and . . . start . . . over." Counsel for each defendant, respectively, in response to inquiry by the judge stated that his client was willing to go ahead with the same jury. Silva again testified. The jury were not resworn.

It is alleged as error (a) that Pina was arraigned in the presence of the jury, (b) that a new jury were not selected, and (c) that the jury were not resworn. There was no

prior objection by Amado's counsel or later saving of an exception to any phase now assigned as error of the procedure which in fact was followed in the trial at this stage or later.

We perceive no possible prejudicial effect from Pina's arraignment in the jury's presence. No actual harm to Amado was shown. His name was not mentioned during the arraignment of Pina, except as it was mentioned in the indictment. This assignment of error is without merit. As to late arraignment generally, see *United States* v. *Austin-Bagley Corp.* 31 F. 2d 229, 234 (2d Cir.), cert. den. 279 U. S. 863.

Although reswearing of the jury would have been appropriate, we regard the apparent acquiescence of Amado's counsel (in Amado's presence) in what was done as amounting to a waiver of any objection to the procedure. The single justice found that Amado's counsel "intended to consent to, or to acquiesce in, the [various] procedures discussed in the . . . findings." Amado's counsel consented, in his presence, that the new trial after the "mistrial" proceed with the same jury. The trial judge had reason to suppose, in the absence of objection and the saving of an exception by Amado's counsel, that there was in substance an agreed incorporation by reference of all the prior proceedings with respect to, and before, the jury, except that all testimony was to be presented once more. Cf. *People* v. *Pelton,* 116 Cal. App. 789, 791–792. If there had been objection and exception, the trial judge could have taken steps to correct or clarify his action. If the judge had refused to do so and an exception had been saved, then Amado could have tested (cf. *Guilmette* v. *Commonwealth,* 344 Mass. 527, 529, and see discussion in cases there cited) the propriety of his refusal by ordinary methods of appellate review. See *Commonwealth* v. *Kerrigan, ante,* 295, 300–301. No showing has been made of any actual prejudicial effect upon Amado, or that in fact he disapproved his counsel's action and acquiescence in what had been done.

There was no specific statutory requirement that the defendant personally, rather than counsel, execute in writing a waiver of any of the matters relating to the mistrial, the selection and swearing of the jury, and the continuing with the same jury. Cf. *Gallo* v. *Commonwealth*, 343 Mass. 397, 402 (where G. L. c. 234, § 26A, was construed as requiring a written waiver and request of the defendant himself, when it was proposed to proceed with eleven jurors). Indeed, in *DeGolyer* v. *Commonwealth*, 314 Mass. 626, 629–632, somewhat relied upon by Amado, it is recognized that a criminal defendant may waive privileges created for his own protection. Amado was not consenting to be tried without a jury, or otherwise than by a jury, so G. L. c. 263, § 6 (as amended through St. 1933, c. 246, §1), and G. L. (Ter. Ed.) c. 278, § 2, so far as they respectively may require a written waiver, have no application. Cf. *Commonwealth* v. *Moniz*, 336 Mass. 178, 180 (improper taking of criminal case from a jury); *S. C.* 338 Mass. 442.

2. When Silva's repetition of his testimony was completed, Troy again took the stand. He was asked about his conversations with Amado. There was objection. The judge inquired of Amado's attorney whether he wanted "any hearing on it." The attorney replied that he did. The jury were excused, and a voir dire in the judge's lobby[1] then took place, at which Amado at first was not present during a brief direct and cross-examination of Troy. The transcript discloses (a) no request by his counsel that he be present, (b) no objection or exception at any time to his absence, and (c) no request that any evidence given during Amado's absence be struck from the record on the voir dire.

Troy's brief testimony on direct and cross-examination was in substance wholly consistent with his earlier testimony in Amado's presence and in open court, concerning

---

[1] It is not contended that it was error to hold the voir dire in the lobby, with the court reporter present, rather than in the courtroom. We thus have no occasion to consider whether this was proper, to avoid inappropriate publicity concerning alleged admissions or a confession which might not be received in evidence or for other reasons. The transcript gives no indication of the judge's reasons for holding the voir dire in the lobby.

oral and written statements alleged to have been made by
Amado in the Wareham police station on May 27, 1963.
These statements described the events of November 27,
1961. The trial judge directed that Amado be brought into
the lobby and be sworn. Thereupon Amado gave testi-
mony about the alleged statements upon direct examination
by his attorney and was cross-examined. On redirect ex-
amination, Troy in Amado's presence repeated at least
some of the testimony given earlier in Amado's absence.
After further examination of Amado, the judge stated that
he did not believe Amado's testimony,[2] which had been to
the effect that in the Wareham police station he had not
read the statement signed by him, that he had then been
intoxicated, and that representations had been made to him
that, if he would sign the statement, he would be released
and a doctor would be called to treat his injured wrist.

Troy was permitted to testify in open court concerning
the statements. Amado was found guilty.

A voir dire obviously is a significant part of the proce-
dural protection afforded to a criminal defendant to pre-
vent the introduction in evidence of any involuntary con-
fession. The Supreme Court of the United States has
recently emphasized the importance of a preliminary exam-
ination and determination by the trial judge of the circum-
stances in which an alleged confession has been made, and
has required that a criminal defendant be given the benefit
of a decision by the judge that the confession was not vol-
untary. See *Jackson* v. *Denno,* 378 U. S. 368, 378–391,
holding it necessary to apply either the "orthodox" rule
or the so-called "Massachusetts rule" in respect of the
preliminary examination of the admissibility of confes-
sions.[3] It will frequently be useful for a defendant to be

---

[2] Indeed, at the close of the trial after a verdict had been returned, the
judge ordered Amado held for the grand jury upon "presumption of per-
jury committed . . . on voir dire."

[3] See *Commonwealth* v. *Sheppard,* 313 Mass. 590, 603–605, cert. den. 320
U. S. 213; *Commonwealth* v. *Makarewicz,* 333 Mass. 575, 585; *Commonwealth*
v. *Marshall,* 338 Mass. 460, 461–462; Meltzer, Involuntary Confessions: The
Allocation of Responsibility between Judge and Jury, 21 U. of Chicago L.

able to communicate with his counsel in the course of the examination of witnesses. See *Guerin* v. *Commonwealth,* 339 Mass. 731, 734–735. Accordingly, we think that present day decisions indicate that it would be improper to deny to a defendant the privilege of being present at a voir dire, if an appropriate request for his presence is made. Cf. *Commonwealth* v. *Millen,* 289 Mass. 441, 451–458, cert. den. 295 U. S. 765; *Snyder* v. *Massachusetts,* 291 U. S. 97, 114–122 (no error in denying to a defendant, over his objection, the right to attend a jury view, but see p. 114); *United States* v. *Johnson,* 129 F. 2d 954, 957–959 (3d Cir.); *Deschenes* v. *United States,* 224 F. 2d 688, 693 (10th Cir.); *Cox* v. *United States,* 309 F. 2d 614, 615–619 (8th Cir.).

It would have been the wiser course if the judge had directed, even in the absence of a request by Amado's counsel, that Amado be present from the outset of the voir dire during Troy's very brief testimony (which covered only less than three pages of the double spaced typewritten transcript of testimony). Nevertheless, no request for his presence was made and no objection or exception by Amado's counsel, who was present, placed the judge on notice that Amado's presence was desired. Had objection been made to Amado's absence, the judge, if it had been appropriate, could (a) have caused Troy's testimony to have been read to Amado, (b) further cross-examination of Troy, or (c) other corrective measures. The single justice's finding (that "Amado's counsel . . . intended to consent to, or to acquiesce in, the procedures") applies as much to the voir dire examination in the lobby as to the earlier and later proceedings in open court. Whatever benefit by way of cross-examination (see *Pointer* v. *Texas,* 380 U. S. 400, 403–408) would have been afforded to Amado, if present, was available to him, of course, through the presence of his counsel.

Rev. 317. See also Maguire, Evidence of Guilt, § 3.03; McCormick, Evidence, §§ 112–119; Wigmore, Evidence (3d ed.) §§ 861–867, 2550; Maguire and Epstein, Preliminary Questions of Fact in Determining the Admissibility of Evidence, 40 Harv. L. Rev. 392; Morgan, Functions of Judge and Jury in the Determination of Preliminary Questions of Fact, 43 Harv. L. Rev. 165; annotations, 85 A. L. R. 870, 888; 170 A. L. R. 567, 587.

We think that the failure of Amado and his counsel to make any request that he be present at the voir dire or to object and except to his absence is fatal to his present contention made long after the trial through different counsel. The conduct of his counsel amounted to such acquiescence in the course followed by the judge as to preclude later objection. See *Johnson* v. *United States,* 318 U. S. 189, 199–202; *Parker* v. *United States,* 184 F. 2d 488, 489–490 (4th Cir.); *Deschenes* v. *United States,* 224 F. 2d 688, 693 (10th Cir.). See also *United States* v. *Atkinson,* 297 U. S. 157, 160.

A trial judge is entitled reasonably to place reliance on counsel to take suitable action to protect the interests of his client, and, in the absence of notice or objection to the judge from the defendant himself, counsel may be regarded as authorized to "control . . . the examination of witnesses and . . . [trial] tactics." See the *Guerin* case, 339 Mass. 731, 735. In this collateral attack on the conduct of the trial we regard counsel's acquiescence and course of conduct and Amado's silence as equivalent to waiver. Cf. *Screws* v. *United States,* 325 U. S. 91, 107. Cf. also *Cross* v. *United States,* 325 F. 2d 629, 631 (Ct. App. D. C.), which, even if correctly decided (a matter which we do not consider), is inapplicable here. A review of the whole trial transcript reveals no respect in which Amado's substantive interests could have been in any respect prejudicially affected by his brief absence from the voir dire. See *People* v. *Teitelbaum,* 163 Cal. App. 2d 184, 208, app. dism. and cert. den. 359 U. S. 206; *Hoskins* v. *Commonwealth,* 188 Ky. 80, 86; *State* v. *Auld,* 2 N. J. 426, 433–435, *S. C.* sub. nom. *United States, ex rel. Auld,* v. *Warden of N. J. State Penitentiary,* 187 F. 2d 615 (3d Cir.). Cf. *Williams* v. *Commonwealth,* 188 Va. 583, 592–593.

*Judgment affirmed.*