ATTORNEY GENERAL *vs.* THE BOOK NAMED "TROPIC OF CANCER."

Suffolk.    May 16, 1962. — July 17, 1962.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Obscenity, Indecency or Impurity. Book. Constitutional Law,* Freedom of speech, Freedom of the press. *Equity Pleading and Practice,* Appeal.

Upon an appeal from a final decree in a proceeding under G. L. c. 272, §§ 28C–28G, adjudging a certain book to be obscene, with a report of material facts and a report of the evidence, where the only important evidence was documentary, this court was in essentially the same position as the trial judge and in making its decision might draw its own inferences without regard to inferences which might have been drawn by him.  [13]

Review of decisions by the Supreme Court of the United States dealing with the question what is or is not constitutionally obscene material.  [13–19]

With respect to material designed for general circulation, only predominantly "hard core" pornography, without redeeming social significance, is obscene in the constitutional sense.  [19]

This court determined that, although a certain book at many places dealt graphically and coarsely with sexual episodes in detail and was repulsive, vulgar and grossly offensive in tone and use of words, taken as a whole it had a serious purpose and literary significance, did not have a predominantly prurient appeal to the average adult, and could not be classified as mere "hard core" pornography, so that the First Amend-

ment to the Federal Constitution precluded holding the book to be "obscene" under G. L. c. 272, §§ 28C et seq. [20–21] WILKINS, C.J. and WILLIAMS & KIRK, JJ. dissenting.

PETITION filed in the Superior Court on July 21, 1961. The case was heard by *Goldberg, J.*

*Charles Rembar* of New York (*William P. Homans, Jr.,* with him) for the interveners.

*James J. Kelleher,* Assistant Attorney General (*Leo Sontag,* Assistant Attorney General, with him), for the Attorney General.

*Reuben Goodman, Rudolph Kass & George Waldstein* for the Civil Liberties Union of Massachusetts & others, amici curiae, submitted a brief.

CUTTER, J. The Attorney General proceeds under G. L. c. 272, §§ 28C–28G (inserted by St. 1945, c. 278, § 1[1]), against a book by Henry Miller, "Tropic of Cancer" (Tropic), published by Grove Press, Inc. (Grove). Answers were filed by Grove, Miller, and other interveners, alleging that c. 272, §§ 28C through 28H, "as applied herein . . . violate rights of the intervenor[s] guaranteed . . . by the . . . Constitution of the United States," under the First Amendment, "as embraced in the Fourteenth Amendment," and under the Constitution of the Commonwealth, Part I, arts. 10, 12, and 16. The case was heard by a judge of the Superior Court, who made a report of material facts. A final decree was entered adjudging Tropic to be "obscene." The interveners appealed. The evidence is reported. The trial judge made the findings summarized below.

"The book was first published in Paris in 1934. The first publication in the United States was on June 24, 1961." Its distribution in Massachusetts was enjoined on July 24,

---

[1] Section 28C reads in part, "Whenever there is reasonable cause to believe that a book which is being . . . distributed . . . is obscene, indecent or impure, the attorney general . . . shall bring an information . . . in equity in the superior court directed against said book by name." Then follow provisions for issuing an order of notice to interested persons and for interlocutory action. Section 28E provides for an adjudication against the book, in the event of default, "if the court finds that the book is obscene, indecent or impure . . . ." Section 28F provides for a similar adjudication in the event of a contested hearing, at which "the court may receive the testimony of experts and may receive evidence as to the literary, cultural or educational character of said book and as to the manner and form of its publication, advertisement, and distribution."

Attorney General *v.* "Tropic of Cancer."

1961. "There is no connected plot . . . . It is largely a tale of the sex experiences of an American . . . [who went to] Paris . . . in the hope of becoming a writer, and who, except on a few occasions, lived the life of a down-and-outer, sponging on friends . . . . It graphically describes sex episodes with almost minute detail. It is in many respects filthy, disgusting, nauseating and offensive to good taste. As one favorable review, which was introduced in evidence, put it, 'Now it must be granted that parts of "Tropic of Cancer" will hammer away at some of the strongest of stomachs.' "[2]

The book, several book reviews, and some advertising were in evidence. "Persons who qualified as literary experts testified." The trial judge stated that he was "irresistibly led to the conclusion that the book is obscene, indecent and impure."

1. The opinion testimony is significant principally in that it discloses that competent critics entertain (and, in some cases, have entertained since 1934) the view that Tropic has great literary merit despite its repulsive features. Because the only important evidence is documentary, we are in essentially the same position as the trial judge, and "may draw our own inferences . . . from the basic facts . . . without deference to any inferences . . . drawn by the trial judge." See *Corkum* v. *Salvation Army of Mass. Inc.* 340 Mass. 165, 166–167. See also *Skil Corp.* v. *Barnet,* 337 Mass. 485, 488.

2. The issue "is whether the" material can "reasonably and constitutionally be found to be obscene." *Commonwealth* v. *Moniz,* 338 Mass. 442, 443 (motion picture). The interveners "concede that the statute covers all material that is obscene in the constitutional sense."

In *Roth* v. *United States,* 354 U. S. 476, 488–489, the

---

[2] The findings also state, "Of the 318 pages of the book, there are sex episodes on 85 pages, some of which are described on two or more pages, and all of which are described with precise physical detail and four-letter words. The author's descriptive powers are truly impressive and he rises to great literary heights when he describes Paris. And suddenly he descends into the filthy gutter. The literary experts testified that the book depicts a type of life in the thirties in a portion of Paris and that it has great literary merit."

majority rejected the test of obscenity in *Regina* v. *Hicklin*, L. R. 3 Q. B. 360 (1868), and pointed out that later decisions have sought to determine "whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest." Material "appealing to prurient interest" was defined as "material having a tendency to excite lustful thoughts" (354 U. S. 476, 487, fn. 20) and was equated to the definition of obscenity in A. L. I., Model Penal Code, § 207.10 (2) (Tent. Draft No. 6, 1957).[3] The *Roth* case recognized that there is constitutional protection (354 U. S. 476, 484) for works containing "ideas having even the slightest redeeming social importance — unorthodox ideas, controversial ideas, even ideas hateful to the prevailing climate of opinion — [which] have the full protection of the [First Amendment] guaranties, unless excludable because they encroach upon the limited area of more important interests." The court, however, stated (p. 485) that "implicit in the history of the First Amendment is the rejection of obscenity as utterly without redeeming social importance" and that "obscenity is not within the area of constitutionally protected speech or press."

---

[3] Section 207.10 (2) reads in part: "A thing is obscene if, considered as a whole, its *predominant* appeal is to prurient interest, i.e., a shameful or *morbid* interest in nudity, sex, or excretion, and if it goes *substantially* beyond customary limits of candor in description or representation of such matters. . . . Obscenity shall be judged with reference to ordinary adults, except that it shall be judged with reference to children or other specially susceptible audience if it appears from the character of the material or the circumstances of its dissemination to be specially designed for or directed to such an audience" (emphasis supplied). See § 251.4 of the proposed final draft of the code (approved May, 1962), which as Mr. Justice Harlan points out in *Manual Enterprises, Inc.* v. *Day*, 370 U. S. 478, 486, requires, in order that material may be held "obscene," not only that "considered as a whole . . . [the material have] predominant appeal . . . to prurient interest," but also "*in addition* . . . [that the material go] substantially beyond customary limits of candor in describing or representing such matters" (emphasis supplied). The comment on § 207.10 (2) (Tent. Draft No. 6, p. 10) points out that the code rejects "the prevailing test of tendency to arouse lustful thoughts . . . because it is unrealistically broad for a society that plainly tolerates a great deal of erotic interest in literature, advertising, and art, and because regulation of thought or desire, unconnected with overt misbehavior, raises the most acute constitutional as well as practical difficulties." See Mr. Justice Harlan's separate opinion in the *Roth* case (354 U. S. 476, 499–500); Schwartz, Criminal Obscenity Law, 29 Pa. Bar Assn. Q. 8. See note, 36 N. C. L. Rev. 189, 196–198.

The *Roth* opinions discuss "obscenity" on a highly theoretical basis. Indeed, the court said (354 U. S. 476, 481, fn. 8), "No issue is presented . . . concerning the obscenity of the material." See Lockhart and McClure, Censorship of Obscenity: The Developing Constitutional Standards, 45 Minn. L. Rev. (hereinafter cited Lockhart) pp. 49–58.[4]  At least the Chief Justice (see his concurring opinion, 354 U. S. 476, 496) thought that he was dealing with "the commercial exploitation of the morbid and shameful craving for materials with prurient effect."[5]

Some principles have been established by the *Roth* case, as applied in the *Moniz* case, 338 Mass. 442, 445–450. (1) Hard core, commercial pornography, "utterly without redeeming social importance" (see 354 U. S. 476, 484–485), is not within the protection of the First Amendment. (2) "The portrayal of sex, e.g., in art, literature and scientific works, is not itself sufficient reason to deny material the constitutional protection of freedom of speech and press" (354 U. S. 476, 487–488). (3) "[W]hether a particular work is . . . [obscene] involves not . . . an issue of fact but a question of constitutional *judgment* of the most sensitive . . . kind." See Mr. Justice Harlan's separate opinion, 354 U. S. 476, 497–498; the *Moniz* case, 338 Mass. 442, 446–447. (4) Material (see 354 U. S. 488–489) must be judged by its effect upon the *"average* person" (not susceptible persons or youths) and by whether the *"dominant theme* of the material *taken as a whole* appeals

[4] For other discussions of the *Roth* case and later decisions, see Lockhart and McClure, Obscenity Censorship, 7 Utah L. Rev. 289; Kauper, Civil Liberties and the Constitution, pp. 52–89; notes, 71 Harv. L. Rev. 85, 91–92, 146–150; 72 Harv. L. Rev. 77, 90–91; 73 Harv. L. Rev. 84, 164–167; 74 Harv. L. Rev. 81, 126; 41 Marquette L. Rev. 320; 106 U. of P. L. Rev. 132; 12 Syr. L. Rev. 58. See also Paul and Schwartz, Obscenity in the Mails, 106 U. of P. L. Rev. 214; Foster, The "Comstock Load" — Obscenity and the Law; 48 J. Cr. Law 245; Note 27 U. of Cinn. L. Rev. 61.

[5] The government brief in the *Roth* case (pp. 22–42) separated allegedly obscene materials into three rough categories which provide a convenient basis of reference, viz. (1) "[N]ovels of apparently serious literary intent" (p. 35); (2) "[B]orderline entertainment . . . ," magazines, cartoons, nudist publications, etc. (pp. 35–36); (3) "[H]ard core" pornography, which "[n]o one would suggest" had literary merit (pp. 37–38). The brief stated (p. 34, fn. 23) that the government had furnished to the court sample items seized as unmailable under 18 U. S. C. § 1461 (1952; see also Supp. III, and 1958 ed.), apparently mostly, if not entirely, "hard core" items. See Lockhart, p. 26.

to prurient interest'' (emphasis supplied).[6]  (5) "[A] work may not be adjudged obscene only because'' objectionable "to many citizens as violative of accepted standards of propriety.''  See the *Moniz* case, 338 Mass. 442, 445.  Apart from these principles, what the Supreme Court means by ''obscenity'' must be determined by what it has done in other cases.[7]

(a) In *Kingsley Books, Inc.* v. *Brown,* 354 U. S. 436, the New York courts (see 1 N. Y. 2d 177, 180, affirming 208 Misc. [N. Y.] 150, 158–159) were sustained in enjoining distribution of fourteen booklets, ''Nights of Horror,'' clearly hard core pornography.  The Supreme Court assumed that the books were obscene and that only the issue of the constitutionality of the testing statute was before it (see p. 439).

(b) In four per curiam decisions (October term, 1957) the Supreme Court reversed decisions of Federal courts of appeal which had treated several different types of material as obscene.  See *Times Film Corp.* v. *Chicago,* 355 U. S. 35 (revg. 244 F. 2d 432, 436 [7th Cir.] on a film dealing with the seduction of a sixteen year old boy by an older woman, and other ''illicit sexual intimacies and acts''); *Mounce* v. *United States,* 355 U. S. 180 (revg. 247 F. 2d 148 [9th Cir.] nudist publications; see *United States* v. *4200 Copies Intl. Journal,* 134 F. Supp. 490 [E. D. Wash.]); *One, Inc.* v. *Olesen,* 355 U. S. 371 (revg. 241 F. 2d 772 [9th Cir.] dealing with a post office order in respect of ''One —

---

[6] See as to this *Butler* v. *Michigan,* 352 U. S. 380, 382–384.  ''. . . [The] appellant was convicted because Michigan . . . made it an offense for him to make available for the general reading public . . . a book that the trial judge found to have a potentially deleterious influence upon youth. . . .  The incidence of this enactment is to reduce the adult population of Michigan to reading only what is fit for children.  It thereby arbitrarily curtails one of those liberties of the individual, now enshrined in the Due Process Clause of the Fourteenth Amendment, that history has attested as the indispensable conditions for the maintenance and progress of a free society.''

[7] Certain cases, decided since the *Roth* case, are of little assistance.  *Adams Newark Theater Co.* v. *Newark,* 354 U. S. 931, a per curiam decision, dealt with theatres.  *Times Film Corp.* v. *Chicago,* 365 U. S. 43, 48–49, dealt with prior licensing of motion pictures and contains only general references to the obscenity problem.  In *Smith* v. *California,* 361 U. S. 147, the court (at p. 149, fn. 4) assumed to be obscene the material then before it but held invalid a city ordinance making it unlawful to have in one's possession any obscene book, even without knowledge of the contents.  See *Demetropolos* v. *Commonwealth,* 342 Mass. 658, 660–661.

The Homosexual Magazine''); *Sunshine Book Co.* v. *Summerfield,* 355 U. S. 372 (revg. 249 F. 2d 114 [Ct. App. D. C.] nudist material). See also the *Moniz* case, 338 Mass. 442, 447–449; Lockhart, pp. 32–39.

(c) In *Kingsley Intl. Pictures Corp.* v. *Regents of the Univ. of N. Y.* 360 U. S. 684, a New York decision (4 N. Y. 2d 349) was reversed which had sustained the denial of a license to show the film "Lady Chatterley's Lover." The majority did not consider whether the film was obscene (360 U. S. 684, 686), but said (at p. 688–689), "What New York has done . . . is to prevent the exhibition of a motion picture because that picture advocates an idea — that adultery under certain circumstances may be proper behavior. . . . [The First Amendment's] guarantee is not confined to the expression of ideas that are conventional or shared by a majority. It protects advocacy of the opinion that adultery may sometimes be proper, no less than advocacy of socialism or the single tax."

(d) *Manual Enterprises, Inc.* v. *Day,* 370 U. S. 478, reversing 289 F. 2d 455 (Ct. App. D. C.) (see fn. 3, *supra*), dealt (pp. 480-481) with a ruling of the Post Office Department barring from the mails magazines ("titled MANual, Trim, and Grecian Guild Pictorial") consisting "largely of photographs of nude, or near-nude, male models"; and containing "advertisements . . . offering nudist photographs for sale." See 18 U. S. C. § 1461 (fn. 5, *supra*). Mr. Justice Harlan's opinion (see fn. 8, *infra*) accepts (p. 481) findings that "(1) the magazines . . . are composed primarily, if not exclusively, for homosexuals, and have no literary, scientific or other merit; [and] (2) they would appeal to the 'prurient interest' of such sexual deviates, but would not have any interest for sexually normal individuals." The Supreme Court on a diversity of grounds[8] (six to one, two

---

[8] Mr. Justice Harlan (with Mr. Justice Stewart concurring) in effect held that the magazines were not obscene, stating (p. 488) that this was to be determined by a "national standard." After a reference to *People* v. *Richmond County News, Inc.* 9 N. Y. 2d 578 (fn. 9, *infra*), it was stated (p. 489) that, "[w]hether 'hard core' pornography, or something less, be the proper test" of obscenity, it was not necessary to go "further in the present case than to hold that" the material before the court was not barred by § 1461. Mr. Justice Black concurred "in the result." Three justices concurred on another ground, and one justice dissented, all without considering whether the material was obscene.

justices not participating) reversed the Court of Appeals decision which had sustained the post office order.

The 1957 term per curiam decisions and the *Kingsley Intl. Pictures Corp.* case (360 U. S. 684) afford the best available indication of what material will not be treated as obscene by the Supreme Court. See *Grove Press, Inc.* v. *Christenberry,* 175 F. Supp. 488, 501–502 (S. D. N. Y.) holding the book, "Lady Chatterley's Lover," not obscene, affd. 276 F. 2d 433, 438–439 (2d Cir.). Cf. *Eastman Kodak Co.* v. *Hendricks,* 262 F. 2d 392, 395–397 (9th Cir.).

The New York Court of Appeals has interpreted § 1141 of the New York Penal Law dealing with obscenity, as applying "only to . . . 'hard-core pornography.'" See *People* v. *Richmond County News, Inc.* 9 N. Y. 2d 578, 586. Section 1141, says Judge Fuld, at p. 587, "focuses predominantly upon what is sexually morbid, grossly perverse and bizarre, without any artistic or scientific purpose or justification."[9]

The issue is where to draw the line between what the First Amendment protects and what is obscene in the constitutional sense. See Lockhart, pp. 58–68, 74–77. The Supreme Court of the United States thus far, as Mr. Justice Harlan's opinion in the *Manual Enterprises* case indicates, has not drawn that line with precision. We, however, are confronted with litigation which should be decided under the law as it now stands, and it is our duty to draw that line as well as we can according to our best judgment of the dictates of the authoritative decisions. A majority of the court feel that we cannot properly evade that duty, even though (as the dissenting opinion points out) the *Roth* case in some respects is a "dim . . . beacon."

---

[9] The *Richmond News* case involved both statutory interpretation and consideration of First Amendment limitations. It treated as not obscene somewhat tawdry material ("Gent," a magazine constituting what the opinion at p. 580 describes as showing "dedication to coarse sensuality"). The court said (p. 588) that this material, "appraised as objectively as is possible in the light of First Amendment concepts, may not be adjudged obscene without impairing the vital social interest in freedom of expression." Cf. *American Civil Liberties Union* v. *Chicago,* 3 Ill. 2d 334, 342–349, decided before the *Roth* case. Cf. also *Times Film Corp.* v. *Chicago,* 365 U. S. 43, 46.

Referring to the three general categories of allegedly obscene material (fn. 5, *supra*), it appears that the Supreme Court already has treated some "borderline entertainment" material and works "of serious . . . intent" as not obscene. Hard core pornography (which involves a "kind of 'pandering' " or "commerce in the obscene," see Model Penal Code, Tent. Draft No. 6, pp. 13–17) is clearly obscene. The most difficult area is that of works which some persons reasonably believe to have literary merit but which, equally reasonably, may be even more objectional to others than "Lady Chatterley's Lover."

We think, in the light of the decisions reviewed above, that the First Amendment protects material which has value because of ideas, news, or artistic, literary, or scientific attributes. If the appeal of material (taken as a whole) to adults is not predominantly prurient, adults cannot be denied the material. When the public risks of suppressing ideas are weighed against the risks of permitting their circulation, the guaranties of the First Amendment must be given controlling effect. The dangers of subjective judgments in the matter of censorship lead to a strong presupposition against suppression. We conclude, therefore, as in effect the New York court did in the *Richmond County News* case, that, with respect to material designed for general circulation, only predominantly "hard core" pornography, without redeeming social significance, is obscene in the constitutional sense.

The Attorney General relies largely on earlier Massachusetts decisions. *Commonwealth* v. *Isenstadt,* 318 Mass. 543 (conviction for the sale of a book called "Strange Fruit," under G. L. c. 272, § 28, prior to its amendment by St. 1945, c. 278, § 1). *Attorney General* v. *"God's Little Acre,"* 326 Mass. 281. These cases were decided, respectively, in 1945 and 1950, each several years before the decision in the *Roth* case. Compare *Attorney General* v. *"Forever Amber,"* 323 Mass. 302, 309–310; *Attorney General* v. *"Serenade,"* 326 Mass. 324, also decided in 1950. The later Supreme Court cases, to the extent inconsistent with

our earlier decisions, are controlling, of course, on constitutional issues.

3. Whether Tropic is "obscene" in the constitutional sense thus depends upon whether the appeal (if any) of Tropic (taken as a whole) to the normal adult is predominantly prurient. It is not relevant that we think that the book at many places is repulsive, vulgar, and grossly offensive in the use of four letter words, and in the detailed and coarse statement of sexual episodes. That a serious work uses four letter words and has a grossly offensive tone does not mean that the work is not entitled to constitutional protection. Much in modern art, literature, and music is likely to seem ugly and thoroughly objectionable to those who have different standards of taste. It is not the function of judges to serve as arbiters of taste or to say that an author must regard vulgarity as unnecessary to his portrayal of particular scenes or characters or to establish particular ideas. Within broad limits each writer, attempting to be a literary artist, is entitled to determine such matters for himself, even if the result is as dull, dreary, and offensive as the writer of this opinion finds almost all of Tropic.

Competent critics assert, and we conclude, that Tropic has serious purpose,[10] even if many will find that purpose obscure. There can be no doubt that a significant segment of the literary world has long regarded the book as of literary importance. A majority of the court are of opinion that the predominant effect and purpose of the book as a

---

[10] Professor Levin of Harvard testified that he thought the author's attitude was "one of disgust with sex" and "the mood . . . one of sexual revulsion. Although a good deal of sex is presented, the author, as it were, is backing away from it and even admonishing against it. It doesn't seem . . . [that] it would be a book to incite lustful thoughts. . . . [I]t . . . [seems] designed to show up western culture at a late stage by dealing with the most ignoble sides of it. . . . [I]t also has passages of some critical and philosophic purport in which the author endeavors to take a more positive view. . . . [S]ome interpreters . . . end by thinking . . . that it is a very healthy book. In my opinion, it is a somewhat morbid book, but a serious one. . . . I think the author is saying, in effect, 'All this is morbid. I am fed up with it.' " More favorable appraisals of the merits of the book were given by other qualified expert witnesses, who expressed, or referred to, opinions that the book contains substantial areas showing literary power. These witnesses included Research Professor Harry T. Moore, Southern Illinois University; Professor Mark Schorer, Chairman of the Department of English, University of California (Berkeley); Professor Morton Bloomfield, English Department, Harvard.

whole is not prurient.  If under the *Roth* case it be a relevant consideration, a majority of the court are of opinion that Tropic is more likely to discourage than "to excite lustful thoughts."  We think that the book must be accepted as a conscious effort to create a work of literary art[11] and as having significance, which prevents treating it as hard core pornography.  In reaching this conclusion, we have carefully considered all the aspects of the book upon which the dissenting justices and the trial judge have commented.

This is not the first time that Tropic has run into censorship.  In *Besig* v. *United States,* 208 F. 2d 142 (9th Cir.), the court sustained a customs prohibition of its importation, relying (p. 146), however, upon something very close to the discredited *Hicklin* test of obscenity.  A customs libel of the book by the United States, however, was recently withdrawn.  See order of the United States District Court, Eastern District, New York, dated August 15, 1961, in evidence.  Compare the discussion by Judge Murphy in *Upham* v. *Dill,* 195 F. Supp. 5, 10–11 (S. D. N. Y.).  An unreported case (*Haiman* v. *Morris,* Illinois Superior Court, Cook County, February 21, 1962) has held the book not to be obscene.  The Pennsylvania Court of Common Pleas reached a contrary conclusion in *Commonwealth* v. *Robin,* 30 U. S. L. Week 2551 (dec. April 17, 1962).

We hold that Tropic is not "obscene" in the constitutional sense.  It cannot constitutionally be held to be obscene under G. L. c. 272, §§ 28C, 28E, and 28F.  We rest our decision squarely on the First Amendment, so that, if review of our decision is sought, there may be no doubt that this case has been decided solely upon the Federal issue.

[11] Not everyone will agree with the analysis of Miller's "thesis" expressed by Dr. Leon S. Shapiro in 36 Harv. Med. Alumni Bull. (No. 3) 36 "that our way of life, particularly the preoccupation with money and goods, leads to a progressive cheapening of life and living and eventually to a frenzy of destruction. . . .  Miller progresses systematically from an examination of the corrupting effects on the individual from certain kinds of social structures, to a similar examination of the effects in interpersonal relations, in the neighborhood, the city, the world. . . .  The real tragedy here is . . . that we should not heed what Miller seems to be saying: that we are worrying blindly about our sexual impulses, while giving full freedom to our aggressive ones. . . ."  Compare Time, June 29, 1962, p. 78.

4. We are not confronted with any question arising under G. L. c. 272, § 28, as amended through St. 1948, c. 328, providing for prosecution for a sale to "a person under the age of eighteen years [of] a book . . . which is obscene . . . *or manifestly tends to corrupt* the morals of youth" (emphasis supplied). See *Butler* v. *Michigan,* 352 U. S. 380, 382–384 (fn. 6, *supra*). See also *Prince* v. *Massachusetts,* 321 U. S. 158, 166–171; Lockhart and McClure, Obscenity Censorship, 7 Utah L. Rev. 289, 298–303. Cf. *Commonwealth* v. *Friede,* 271 Mass. 318, 322–323.

5. The final decree is reversed. A new decree is to be entered that the book "Tropic of Cancer" is entitled to the protection of the First Amendment and cannot be held to be obscene under G. L. c. 272, §§ 28C, 28E, and 28F.

*So ordered.*

The Chief Justice and Justices Williams and Kirk cannot join in the foregoing opinion.

The majority, in expressing deference to some very recent decisions of the Supreme Court of the United States, particularly *Roth* v. *United States,* 354 U. S. 476, declare that G. L. c. 272, §§ 28C, 28E, and 28F, as applied to this book are repugnant to the First Amendment to the Constitution of the United States. The *Roth* case, as we read, is not clear authority to this extent, and as presently applied, is too dim a beacon by which to guess a course.[1] The onus of the present majority result should rest upon the court which decided the *Roth* case. If a majority of the members of that tribunal should be of the opinion that the people of Massachusetts constitutionally cannot be deprived of access to this item of reading material, we believe that they should be given the specific opportunity so to state.

The book is pitched at the nadir of scatology. Indeed, its low level is relied upon as engulfing all obscene effect.

---

[1] There were four opinions dealing with two cases. The majority opinion was of five justices two of whom are no longer on the court. There was a second opinion concurring in the result. An opinion by one justice dissented in one case and concurred in the other. There was a dissenting opinion by two justices. The dim beacon has not been made brighter by *Manual Enterprises, Inc.* v. *Day,* 370 U. S. 478.

We cannot bring ourselves to accept the thesis that the book, thus indicted, becomes endowed with constitutional protection.  Its detailed and sordid sex episodes, persistently inserted at intervals in what passes for narrative, leave an outweighing staccato impression.  In our opinion it should be classified as pornography.

Because of its impact upon other obscenity statutes, many of long standing, the majority decision will have a wide practical effect.  It should lead to legislative reëxamination of the entire field.

We would affirm the decree of the Superior Court.