COMMONWEALTH *vs.* GEORGE C. HORTON
(and a companion case[1]).

Norfolk.    November 5, 1973. — April 23, 1974.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Obscenity.   Constitutional Law,* Freedom of speech and press.   *Statute,* Construction.

G. L. c. 272, § 28A, lacks the specific description of sexual conduct required under *Miller* v. *California*, 413 U. S. 15 (1973) and, in the absence of authoritative judicial construction providing such specificity, is unconstitutionally vague. [166-173] HENNESSEY and

---

[1] Commonwealth *vs.* Richard O'Brien.

KAPLAN, JJ., concurring; BRAUCHER, J., with whom REARDON and QUIRICO, JJ., join, dissenting.

INDICTMENTS found and returned in the Superior Court on January 7, 1972.

The cases were tried before *Dimond*, J.

*Alvin Pudlin* of Connecticut (*Leonard R. Skvirsky* with him) for the defendants.

*John P. Connor, Jr.*, Assistant District Attorney, for the Commonwealth.

WILKINS, J.   The defendant Horton, an employee in a Quincy bookstore, was indicted for the sale in August, 1971, of "certain obscene and impure magazines entitled 'Love Theme' and 'Young Stuff.' " The defendant O'Brien, the owner of the bookstore, was indicted on the same day for possession of "certain obscene, indecent, or impure magazines . . . [the same magazines] with intent to sell [them]." The cases were tried together in May, 1972, and the defendants were found guilty. Each defendant was placed on probation for one year; O'Brien was fined $1,000.

The defendants claimed various exceptions at trial but have argued before us, in connection with their motion for directed verdicts, only that G. L. c. 272, § 28A,[2] is unconstitutionally vague and overbroad and that it would be unconstitutional for this court now to construe § 28A so as to be applicable to acts committed by them in 1971. Basically the defendants argue that § 28A does not satisfy the First Amendment standards prescribed in *Miller* v. *California*, 413 U. S. 15 (1973), decided on June 21, 1973; that our decisions have not interpreted § 28A so as to meet

---

[2] General Laws c. 272, § 28A, as appearing in St. 1959, c. 492, § 2, reads as follows: "Whoever imports, prints, publishes, sells or distributes a pamphlet, ballad, printed paper, phonographic record, or other thing which is obscene, indecent or impure, or an obscene, indecent or impure print, picture, figure, image or description, or buys, procures, receives or has in his possession any such pamphlet, ballad, printed paper, phonographic record, obscene, indecent or impure print picture, figure, image or other thing, for the purpose of sale, exhibition, loan or circulation, shall be punished by imprisonment in the state prison for not more than five years or in a jail or house of correction for not more than two and one half years, or by a fine of not less than one hundred dollars nor more than five thousand dollars, or by both such fine and imprisonment in jail or the house of correction."

the constitutional requirements set forth in the *Miller* case; and that it would be improper for this court now to interpret § 28A retroactively so as to import into § 28A that specificity which under the *Miller* case must exist either in the words of the statute or in authoritative judicial construction of the statute. *Miller* v. *California, supra,* 24.

The defendants were tried under the so called *Roth-Memoirs* standard. *Roth* v. *United States,* 354 U. S. 476 (1957). *"John Cleland's Memoirs of a Woman of Pleasure"* v. *Attorney Gen. of Mass.* 383 U. S. 413 (1966). That standard required three elements to be established in order to obtain a constitutionally justified obscenity conviction. The prosecution had to establish that "(a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value." *"John Cleland's Memoirs of a Woman of Pleasure"* v. *Attorney Gen. of Mass., supra,* 418.

No Justice of the United States Supreme Court now endorses the *Roth-Memoirs* test as the measure of First Amendment protection in obscenity cases. See *Miller* v. *California, supra,* 23; *Paris Adult Theatre I* v. *Slaton,* 413 U. S. 49, 73 (1973) (Brennan, J., dissenting). A bare majority of those Justices have arrived at a new set of basic guidelines. Those guidelines are intended to define the permissible scope of State statutes designed to regulate works which depict or describe sexual conduct. *Miller* v. *California, supra,* 24.[3] The applicable State law, "as written or authoritatively construed," must specifically define the sexual conduct whose depiction or description is interdicted. *Miller* v. *California, supra,* 24. The new basic guidelines, which also set forth a three-pronged test, call for

---

[3] We note that the four dissenting Justices would extend First Amendment protection to the publications involved here, which were sold to consenting adults. *Miller* v. *California, supra,* 37 (Douglas, J., dissenting). *Paris Adult Theatre I* v. *Slaton,* 413 U. S. 49, 73, 113 (1973) (Brennan, J., dissenting, joined by Stewart and Marshall, JJ.).

the trier of fact to determine "(a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest . . .; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." Emphasizing that it is not its function to propose regulatory schemes for the States, the court gave "a few plain examples" of what a State statute could define for regulation under part (b) of the new guidelines.[4]

Applying the *Miller* standards to G. L. c. 272, § 28A, it is manifest that § 28A does not define the sexual conduct whose display or description is intended to be prohibited. The *Miller* opinion, however, recognizes that authoritative judicial construction of an obscenity statute may fulfil the constitutional requirement that the State law specify that sexual conduct which is prohibited. Some State courts in post-*Miller* decisions have been able to sustain obscenity statutes by concluding that previous judicial construction of the applicable statute has already provided the specificity required by the *Miller* case.[5] Other decisions have read into the applicable obscenity statute those definitions of

---

[4] The examples given are (*Miller* v. *California, supra,* 25): "(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated. (b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals."

[5] *Rhodes* v. *State,* 283 So. 2d 351, 355-356 (Fla. 1973). *State ex rel. Wampler* v. *Bird,* 499 S. W. 2d 780, 784 (Mo. 1973). *People* v. *Heller,* 33 N. Y. 2d 314, 327, 329 (1973). *State ex rel. Keating* v. *A Motion Picture Film Entitled "Vixen,"* 35 Ohio St. 2d 215 (1973). *Price* v. *Commonwealth,* 214 Va. 490 (1974). *People* v. *Enskat,* 33 Cal. App. 3d 900, 908 (1973), cert. pending sub nom. *Enskat* v. *California,* (March 19, 1974) 42 U. S. L. Week 3526. See *Jenkins* v. *State,* 230 Ga. 726 (1973), probable jurisdiction noted, 414 U. S. 1090 (1973).

Note is taken of the decision of the Appeals Court in *Commonwealth* v. *Claflin,* Mass. App. Ct.        (1973) (298 N. E. 2d 888), decided on July 11, 1973, although argued prior to the decision in the *Miller* case. The *Claflin* case was decided on the *Roth-Memoirs* standard. The Appeals Court noted that the defendant did not request an opportunity for further brief or argument on the effect of the *Miller* case on his claim that G. L. c. 272, § 28A, was unconstitutional. Nor did the defendant seek further appellate review here.

specific sexual conduct which appear in the *Miller* opinion
(see fn. 4 above).[6] Some of the decisions upholding State
obscenity statutes have been made in the face of forceful
dissents.[7] Other courts, fewer in number, have declined to
provide a judicial rescue for statutes which by their terms
failed to meet the *Miller* requirement of specificity.[8] The
basic question here is what course this court should now
follow.

In the absence of any legislative redefinition of obscenity,
persons concerned about the application to them of Mas-
sachusetts obscenity statutes have been obliged in recent

---

[6] State Cases: *Gibbs* v. *State*, 255 Ark. 997 (1974). *State* v. *J-R Distribs. Inc.* 82
Wash. 2d 584, 601 (1973), cert. pending sub nom. *J-R Distribs. Inc.* v. *Washing-
ton*, (December 17, 1973) 42 U. S. L. Week 3391. *West* v. *State*, 511 S. W. 2d 502
(Tex. Crim. App. 1974). See *State* v. *Welke*, 298 Minn. 402 (1974) (*Miller*
standard said to be applicable but not retroactively).

Federal cases: *United States* v. *12 200-Ft. Reels of Super 8 MM. Film*, 413 U. S.
123, 130 (fn. 7) (1973). This opinion was issued on the same day as the *Miller*
opinion, incorporated the *Miller* description of specific prohibited sexual conduct
(see fn. 4 above), and thus set the pattern for lower Federal Court opinions dealing
with the confiscation of obscene matter in interstate and foreign commerce. See
*United States* v. *One Reel of Film*, 481 F. 2d 206, 209 (1st Cir. 1973); *United States*
v. *One Reel of 35 MM Color Motion Picture Film Entitled "Sinderella," Sherpix,
Inc.* 491 F. 2d 956 (2d Cir. 1974). Compare *United States* v. *Thevis*, 484 F. 2d 1149,
1155 (5th Cir. 1973), cert. pending sub nom. *Thevis* v. *United States*, (January 8,
1974) 42 U. S. L. Week 3407 (a criminal prosecution).

[7] *Jenkins* v. *State, supra*, 230 Ga. 726, 737 (1973). *State ex rel. Wampler* v. *Bird*,
*supra*, 499 S. W. 2d 780, 784 (Mo. 1973). *People* v. *Heller*, 33 N. Y. 2d 314, 334, 338
(1973). *State* v. *J-R Distribs. Inc.*, *supra*, 82 Wash. 2d at 653, 658 (1973).

[8] *Stroud* v. *State*,       Ind.       (1973) (300 N. E. 2d 100 [1973]). *State* v.
*Wedelstedt*, 213 N. W. 2d 652 (Iowa 1973). *State* v. *Shreveport News Agency, Inc.*
287 So. 2d 464 (La. 1973). *Art Theater Guild, Inc.* v. *State*, 510 S. W. 2d 258 (Tenn.
1974). In the *Stroud* case the Supreme Court of Indiana dealing with an obscenity
statute as general as ours (Ind. Sts. Anno. § 10-2803 [Burns 1973 supp.]) ordered
the defendant to be discharged because the statute was "too general in nature and
does not set out specifically the sexual or obscene acts which . . . constitute a
violation of the statute."       Ind. at       (1973) (300 N. E. 2d at 101 [1973]). The
brief unanimous opinion did not discuss the possibility of saving the statute by
judicial construction. In the *Shreveport News Agency* case, the Supreme Court of
Louisiana (three Justices dissenting) said that "it would be an unconstitutional
usurpation of the legislative function for us to engraft these limiting two examples
[referring to the examples in the *Miller* opinion quoted in fn. 4 above] into a
broad, general statute . . . ." 287 So. 2d at 470 (La. 1973). For Federal opinions
declaring or suggesting the unconstitutionality of State obscenity statutes, see
*Hamar Theatres, Inc.* v. *Cryan*, 365 F. Supp. 1312 (D. N. J. 1973), cert. pending
sub nom. *Cryan* v. *Hamar Theatres, Inc.* (December 18, 1973) 42 U. S. L. Week
3365; *Detco, Inc.* v. *McCann*, 365 F. Supp. 176, 178 (E. D. Wis. 1973).

years to gauge the legality of their intended conduct by First Amendment standards expressed by, or anticipated from, the Supreme Court of the United States.[9] During a time when First Amendment rights were expanding so as to reduce the scope of what might constitutionally be regulated as obscene, the application of new standards was not unfair to those affected by obscenity laws and no serious constitutional problems of "vagueness" were raised. We believe, however, that with the *Miller* decision the situation has changed.

In at least one material respect the *Miller* case reduces the area of First Amendment protection from that existing under the *Roth-Memoirs* test.[10] Under the *Roth-Memoirs* standard there had to be an affirmative showing that the materials were "utterly without redeeming social value." See *Jacobellis* v. *Ohio*, 378 U. S. 184 (1964); *"John Cleland's Memoirs of a Woman of Pleasure"* v. *Attorney Gen. of Mass.* 383 U. S. 413 (1966). Under the *Miller* test the work must lack "serious literary, artistic, political, or scientific value." Today a work not utterly without social value but of less than serious literary, artistic, political, or

___

[9] The treatment of this court's interpretation of Massachusetts obscenity laws by the Supreme Court of the United States has not been one of warm embrace. See, e.g., *"John Cleland's Memoirs of a Woman of Pleasure"* v. *Attorney Gen. of Mass.* 383 U. S. 413 (1966), revg. *Attorney Gen.. v. "John Cleland's Memoirs of a Woman of Pleasure,"* 349 Mass. 69 (1965). In turn, decisions of this court have, often with expressed reluctance (see, e.g., *Commonwealth* v. *Palladino*, 358 Mass. 28, 32 [1970]; *Commonwealth* v. *Donahue*, 358 Mass. 803 [1970] [rescript]; *Commmonwealth* v. *Bitsocos*, 361 Mass. 859 [1972] [rescript]), acceded to the First Amendment views of the Supreme Court of the United States with the result that our obscenity statutes have been treated here as being as broad in scope as the Supreme Court of the United States will permit them to be under the First Amendment as applied to the States under the Fourteenth Amendment. This circumstance has meant in effect that the application of our obscenity statutes has been regulated by the majority views of the Justices of the United States Supreme Court (see *Attorney Gen.* v. *"Tropic of Cancer,"* 345 Mass. 11, 21, 22 [1962]), even to the point of this court's reinterpreting the appropriate sections of G. L. c. 272 as of the date of specific Supreme Court opinions. See *Attorney Gen.* v. *"Naked Lunch,"* 351 Mass. 298, 300 (1966).   .   .

[10] Perhaps in other respects the standards of the *Miller* case are not significantly different from the comparable standards of the *Roth-Memoirs* test, although further refinements of the *Miller* standards may in time reveal differences which will show that in other respects the *Miller* test reduces areas of permissible conduct under the First Amendment.

scientific value may be prohibited as obscene, whereas before it could not.[11]

A review of our decisions indicates that we have not authoritatively construed § 28A in a way which has "specifically defined" the sexual conduct whose portrayal is barred by statute. Certainly our decisions fall far short of the degree of definitiveness appearing in statutes in Oregon and Hawaii, whose definition of prohibited conduct was at least qualifiedly endorsed in the *Miller* opinion (*supra*, 24, fn. 6). Our decisions also fall far short of the "plain examples" given in the *Miller* opinion (see fn. 4 above). The most we have ever said was said in a negative way in a rescript opinion complying with what we viewed as the requirements of the Supreme Court of the United States. See *Commonwealth* v. *Donahue*, 358 Mass. 803 (1970) ("[n]one of the pictures, however, explicitly portrayed copulation or other sexual congress"). See also *Commonwealth* v. *Palladino*, 358 Mass. 28, 32 (1970), and *Commonwealth* v. *Bitsocos*, 361 Mass. 859 (1972), for even more general characterizations in the same vein.[12] The opinion in the *Donahue* case was not designed as an authoritative construction of our statute (G. L. c. 272, § 28A) so as to provide a definition of proscribed sexual conduct. The Court of Appeals for the First Circuit was correct in indicating in *Literature, Inc.* v. *Quinn*, 482 F. 2d 372, 375 (1973), that this court has not "specifically defined" (see *Miller* v. *California*, *supra*, at 24) those

[11] Paradoxically, in this respect, the third *Miller* element (clause [c]) is close to the view expressed by this court in *Attorney Gen.* v. *"John Cleland's Memoirs of a Woman of Pleasure,"* *supra*, at 73, in assessing the requirements of the *Roth* case that the work be "utterly without redeeming social importance." We said there that "[w]e do not interpret the 'social importance' test as requiring that a book which appeals to prurient interest and is patently offensive must be unqualifiedly worthless before it can be deemed obscene." That view was rejected, of course, on appeal by the Supreme Court of the United States, *"John Cleland's Memoirs of a Woman of Pleasure"* v. *Attorney Gen. of Mass.* 383 U. S. 413 (1966). If it had not been, arguably the problem with which this court is now confronted would not have arisen.

[12] In each of these three cases the material involved was held not to be obscene because the Supreme Court of the United States had extended First Amendment protection to publications which, although portraying sexually provocative poses, did not portray sexual congress or other hard core pornography.

activities which under § 28A may not be depicted or described. It is therefore clear that the opportunity is not fairly available to us, as it was in certain other States (see fn. 5 above), to conclude that the constitutional requirements of specificity have been met by our decisions previous to the *Miller* decision.[13]

We decline to undertake now to furnish, even on a prospective basis, a judicial interpretation of that sexual conduct which § 28A provides should not be portrayed. To do so would require us to engage in a function which we, perhaps more than many courts, have been traditionally reluctant to perform. It is true that, despite traditional reluctance, this court has for many years undertaken to protect such vestiges of our obscenity statutes as it could from the erosion of waves of constitutional onslaught. In doing so we have suggested that our obscenity statutes apply as far as the Federal Constitution may permit. That itself has been a standard of some uncertainty, subject to abrupt change, as the *Miller* case so clearly shows. It may seem strange that we appear to have abandoned the struggle just as the tide may have turned. It is, however, for that very reason that we decline further to engage in the function of saving judicially a statute which is of great ambiguity on its face. The abandonment of the *Roth-Memoirs* test has removed the basis upon which this court has attempted to save § 28A by judicial construction.

People are entitled to know what they may or may not do under the threat of imprisonment or fine. Our general obscenity statute does not furnish any guidance. As previously indicated, we decline to undertake the task of trying to list the specific sexual conduct whose display or description § 28A proscribes. To do so would constitute a judicial rewriting of that statute. Thus if there is to be regulation in

---

[13] Although it is not the ground of our decision and is alluded to only parenthetically in the defendants' brief, the pictures in the two magazines which were the basis of these prosecutions do not explicitly portray sexual congress. In many pictures sexual congress of some sort appears imminent; indeed in some it seems virtually inevitable; and in others it is at most implicit, obscured because of the angle of the picture.

the Commonwealth in the area of the sale or showing of pornographic works to adults, it must be achieved by explicit new legislation.[14]

We do not see any rational basis for treating violations allegedly committed (or a case tried) before the *Miller* decision, as is the situation here, differently from those taking place after that decision. In each instance § 28A is constitutionally inadequate. Thus, although the defendants may well have had an error-free trial under the law as it existed at the time of trial, we must apply Federal constitutional principles as established by the Supreme Court of the United States at the time a case is decided by us. See *Attorney Gen.* v. *"Tropic of Cancer,"* 345 Mass. 11, 18 (1962); *Linkletter* v. *Walker,* 381 U. S. 618, 622, 627 (1965).

One cautionary note should be given concerning what we have not decided. Speaking generally, G. L. c. 272, § 28, deals with actual or intended sales, exhibitions, or distributions of certain material harmful to minors. The words "harmful to minors" have an explicit statutory definition, expressed somewhat along the pattern of the *Roth-Memoirs* test. Such an explicit description of prohibited conduct obviously does not suffer from the same lack of specificity found in G. L. c. 272, § 28A, when tested by the standards of the *Miller* decision. Our decision should not, therefore, be construed as expressly or impliedly rendering unenforce-

---

[14] The Legislature can deal with the subject comprehensively. Unlike this court, the Legislature is in a position to define prohibited conduct so as to permit the display or description of activity which could be constitutionally prohibited. It may conclude that the expense in time and funds does not warrant enforcement *of constitutionally permissible restraints* in all *instances*. It can deal with the question whether the "community" whose standards are to be used by the trier of · fact should be a State-wide or localized community. Such a consideration is permissible because the "national" standard of First Amendment protection has been abandoned in the *Miller* case. See *Miller* v. *California, supra,* 30-34. If this court were to undertake, in the guise of construing our obscenity statutes, to define the geographical boundaries of the "community" whose contemporary standards are to apply under the *Miller* case, it would plainly be involved in a "rewriting" of those statutes. In addition, legislative determinations can have a prospective application, whereas a judicial determination, as to the meaning of a statute, normally would not.

able the statute concerned with the furnishing of obscene material to minors.[15]

From what we have said it is apparent that the defendants are the fortuitous beneficiaries of the consequences in this Commonwealth of the decision of the Supreme Court of the United States in the *Miller* case.

*Exceptions sustained.*

Note: Chief Justice Tauro and Justices Hennessey and Kaplan join in the preceding majority opinion, and in the majority opinion in the cases *Commonwealth* v. *Capri Enterprises, Inc.,* and *Essex Theatre Corporation* v. *Police Commissioner of Boston,* decided April 23, 1974.

HENNESSEY, J. (concurring). I concur as to both result and reasoning with the opinion of the court as expressed by Justice Wilkins. The United States Supreme Court, in the *Miller* case, ruled that the Constitution requires specificity in an obscenity statute. More particularly, the relevant sexual conduct must be specifically defined either in the wording of the statute or by authoritative judicial construction of the statute. Clearly G. L. c. 272, § 28A, contains no such specifics in its wording. Nor have we authoritatively construed the statute. The few Supreme Judicial Court cases relied on in the dissent in *Commonwealth* v. *Capri Enterprises, Inc., post,* 179 , contain only cursory, and at best ambiguous, reference to proof under the statute. Just as important, until the *Miller* case established a rule of community standards, everything that we said about our

---

[15] General Laws c. 272, § 28, as appearing in St. 1966, c. 418, § 1, defines "harmful to minors" to include, among other things, a "quality of description or representation of nudity, sexual conduct or sexual excitement which . . . is utterly without redeeming social importance for such minors." This standard, as the *Miller* case indicates, may be more generous than the Constitution requires. If this court had incorporated the *Miller* case standards into the State's general obscenity statute (i.e., lacking "serious literary, artistic, political, or scientific value"), arguably it could have produced the anomalous result that pornographic material having some "social importance" but not "serious" value could be distributed to minors under § 28 but not to adults under § 28A.

statute had to be read in the context of national standards of First Amendment protection. These national standards in turn have been so vaguely defined as to foreclose any authoritative construction of a local obscenity statute.

Every appeal deserves our most careful consideration, but there is an added and special importance in our reaching the correct results in this decision, the *Capri* case, *supra*, and *Essex Theatre Corp.* v. *Police Commr. of Boston, post*, 183. For about seventeen years confusion has reigned as to the validity and effectiveness of obscenity statutes. Decisions of the United States Supreme Court virtually halted prosecutions under such statutes. Upholding the statute here through what could only be impermissible and excessive straining on our part might add months or years of unnecessary uncertainty and confusion to the long hiatus that has already occurred. Eventually and almost certainly, in my opinion, review of these cases or other relevant cases in the Federal courts would result in a determination of unconstitutionality of the statute. See *Literature, Inc.* v. *Quinn*, 482 F. 2d 372 (1st Cir. 1973).

By our ruling today, the Legislature is made aware that the statute, G. L. c. 272, § 28A, is no longer viable. Simultaneously, the Legislature is apprised that, in the *Miller* case, for the first time since the free speech-obscenity dialogue began in earnest, guidelines for a constitutionally acceptable objective standard for obscenity statutes have been established by the United States Supreme Court. Moreover, such statutes may now be construed by community, rather than national, standards.

Thus the Legislature may now at its option, without further delay or confusion, determine whether the Commonwealth should or should not have a new obscenity statute or statutes. If it decides that question affirmatively, it alone has the privilege of defining, within constitutional limits, the conduct which shall be proscribed. It is not for this court to make those decisions.

Nevertheless, if the reasoning of the three dissenting Justices of this court in the *Capri* case, *supra*, were to prevail, it would in effect require that we should make those

legislative determinations. I respectfully suggest that these Justices are applying the same type of subjective individual judgments that some or all of the Justices of the United States Supreme Court have applied in the last two decades of judicial confusion in this area of the law. Bickel, The Supreme Court and the Idea of Progress, 50-58 (1970). The fact that an "exhibitor" or "any competent adult," as referred to in the dissenting opinion in the *Capri* case, may conclude that the subject matter is obscene, in the sense that it is tasteless or degrading, does not necessarily support a conclusion that those persons are or should be aware that the same matter is *legally* obscene within the meaning of any statute. The legal concept has been complicated by a series of United States Supreme Court decisions. These raised a mythical and mystifying national standard of First Amendment protection. They also provided First Amendment protection on the basis of social worth that was all but imperceptible in some cases. For example, in *"John Cleland's Memoirs of a Woman of Pleasure"* v. *Attorney Gen. of Mass.* 383 U. S. 413 (1966), the court held that "Memoirs" was protected by the First Amendment, although Mr. Justice Clark summarized its total vulgarity (383 U. S. at 445-446) in a list that, for length and strength, is at least a match for the similar synopsis on which the dissent relies in the *Capri* case, *supra*.

In a long series of cases the Supreme Court has invariably, with two inexplicable exceptions,[1] reversed all judgments based on findings of obscenity in cases which apparently involved all types of alleged pornography.[2] The

---

[1] *Ginzburg* v. *United States,* 383 U. S. 463 (1966). *Mishkin* v. *New York,* 383 U. S. 502 (1966).

[2] *Times Film Corp.* v. *Chicago,* 355 U. S. 35 (1957). *Mounce* v. *United States,* 355 U. S. 180 (1957). *One, Inc.* v. *Olesen,* 355 U. S. 371 (1958). *Sunshine Book Co.* v. *Summerfield,* 355 U. S. 372 (1958). *Kingsley Intl. Pictures Corp.* v. *Regents of the Univ. of the State of N. Y.* 360 U. S. 684 (1959). *Smith* v. *California,* 361 U. S. 147 (1959). *Marcus* v. *Search Warrant of Property at 104 East Tenth St., Kansas City, Mo.* 367 U. S. 717 (1961). *Manual Enterprises, Inc.* v. *Day,* 370 U. S. 478 (1962). *Jacobellis* v. *Ohio,* 378 U. S. 184 (1964). *A Quantity of Copies of Books* v. *Kansas,* 378 U. S. 205 (1964). *Tralins* v. *Gerstein,* 378 U. S. 576 (1964). *Grove Press, Inc.* v. *Gerstein,* 378 U. S. 577 (1964). *Trans-Lux Distrib. Corp.* v. *Board of Regents of the Univ. of N. Y.* 380 U. S. 259 (1965). *Redrup* v. *New York,* 386 U. S. 767 (1967). *Kois* v. *Wisconsin,* 408 U. S. 229 (1972).

phrase "hard-core pornography," upon which the dissenters apparently rely in their reasoning, is little more than a cliché which has not been defined in any case, nor has it apparently been a premise for the affirmation of even one judgment of guilt. Even the three decisions of the Supreme Judicial Court which are relied on in the dissent in the *Capri* case, *supra*, as authoritative constructions of the statute, were all reversals of convictions. *Commonwealth* v. *Palladino*, 358 Mass. 28 (1970). *Commonwealth* v. *Donahue*, 358 Mass. 803 (1970). *Commonwealth* v. *Bitsocos*, 361 Mass. 859 (1972).

We should take notice of abundant empirical evidence that the community has tolerated increasingly permissive displays of pornographic literature and X-rated movies. Ultimate sexual acts have been depicted in scores of moving pictures and regularly shown in theatres in all of the urban communities, and many of the suburbs and rural areas, in the Commonwealth. From one such motion picture the male star received an Academy Award nomination for a performance which included repeated and explicit scenes of coitus with the female costar. Photographs of these actors, in sexual congress, also appeared in our national news magazines of widest distribution. It is not surprising if, in all these circumstances, some police and prosecutors, or the defendants in these cases before us, concluded that the national standard superimposed on our local law had reached a state of almost unlimited permissiveness. These developments of the most recent several years have not been refuted by any firm language of this court or the United States Supreme Court. Thus I cannot conclude that we have authoritatively construed our statute in the manner demanded by the *Miller* case.

Finally, I offer one collateral thought. Justice Kaplan's concurring opinion expresses the idea that the holdings of the *Miller* case and related recent cases are "probably transient." I share his suspicion. In a very few years the Supreme Court has gone from the *Roth-Memoirs* standard all the way to the *Miller* standard. In between there was a temporary reversal of direction in the *Ginzburg* and *Mish-*

*kin* cases, *supra.* Similarly, certain crucial rules relating to the right to counsel as established in *United States* v. *Wade,* 388 U. S. 218 (1967), and *Gilbert* v. *California,* 388 U. S. 263 (1967), were all but vacated by the severe limitations of *Kirby* v. *Illinois,* 406 U. S. 682 (1972), just five years later.[3] Likewise, the relative certainty concerning search and seizures related to automobiles, as established by *Chambers* v. *Maroney,* 399 U. S. 42 (1970), was cast into confusion by *Coolidge* v. *New Hampshire,* 403 U. S. 443 (1971), the very next year. See *Commonwealth* v. *Haefeli,* 361 Mass. 271 (1972). Certainly constitutional interpretation must respond to social change, but this duty does not explain speedy overruling of new doctrines. These turnarounds are followed by serious consequences to many people in every community. Especially in the area of constitutional-criminal law all concerned are entitled to a substantial measure of stability and predictability.

KAPLAN, J. (concurring). The latest, but probably transient, view of a majority of the Supreme Court of the United States seems to demand of a State statute on criminal "obscenity" that it should comprise specifics, thus reverting to the style of the motion picture production code sponsored by the late Will H. Hays.[1] I agree that the tired words of our statute do not have the magical property of instantly conforming their meaning to the hypothesized statute, and therefore I join in the court's opinion.

Persons with a reflective or experimental turn of mind might welcome an opportunity to observe how New England communities would carry on over a period of time without the assistance of suppressive law. The prospect is remote. The court's opinion is likely to be understood as an urgent invitation to our legislators to draft and pass the indicated statute. Therefore I think I should say that such

[3] I recognize that the plurality in the *Kirby* case implied that it was merely clarifying what had always been the law. Nevertheless, I suggest that most trial judges, after the *Wade* case and prior to the *Kirby* case, were applying the rule that the suspect was entitled to assistance of counsel at all pre-trial identification procedures, before or after complaint or indictment.

[1] See Inglis, Freedom of the Movies, 205-219 (1947).

an enactment would present for independent consideration a question of constitutionality. For the time being the doubt would not arise from the Constitution of the United States, for in that respect all are bound by the latest decisions of the Supreme Court; rather it would arise from the Massachusetts Declaration of Rights. In applying that fundamental document, one would have to consider whether to align oneself with those dissenting Justices of the Supreme Court who believe a State is without power to intrude on the choice of an adult who knowingly and willingly seeks out a pornographic work. According to their conception, a pornographic communication is still a communication which the free press guaranty protects at least to the extent mentioned; in that regard it does not differ from other messages that many would consider profoundly anti-social, for example, the writings of Henry George on the single tax.

If this view should prevail, our courts would be relieved of the anomalous duty of serving as literary and artistic constables, and the Commonwealth would be spared the phenomenon of judges (very few of them women) trying as official censors to assess the incitive or emetic qualities of movies or books that a considerable fraction of the population, pursuing their own tastes, desire to see or read. The reallocation of judicial resources to tasks that judges are better schooled to handle might be thought to be in itself a distinct gain.

BRAUCHER, J. (dissenting, with whom Reardon and Quirico, JJ., join). For the reasons stated in our dissenting opinion in *Commonwealth* v. *Capri Enterprises, Inc., post,* 179, we do not agree that G. L. c. 272, § 28A, is unconstitutionally vague under the standard of *Miller* v. *California,* 413 U. S. 15 (1973). We should proceed to decide these cases, applying the *Miller* standard. Since the court does not consider any issues relating to the application of the *Miller* standard to the facts of these cases, we forbear further discussion.